that profit is increased by Gebco's failure to pay subcontractors who improved the property, however, the incremental benefit would constitute unjust enrichment.

The trustee on behalf of Gebco has not demonstrated a superior right to the fund over that of the subcontractor, but rather is in a less favorable position since Gebco's recovery would result in unjust enrichment. To avoid such a result, a constructive trust for the benefit of the subcontractor should be imposed on the fund in Equibank's possession. *Gee v. Eberle, supra.*

We conclude that Monroeville Electric could recover from the fund held by Equibank either as a third party beneficiary of the construction loan agreement, as an equitable assignee, or in order to avoid unjust enrichment to the bank or Gebco.

Accordingly, the judgment of the district court will be reversed and the case remanded for proceedings consistent with this opinion.

**UNITED STATES of America, Appellee,**

v.

**Carroll LEPPO, Appellant.**

**No. 80–2277.**

United States Court of Appeals, Third Circuit.

Argued Jan. 13, 1981.

Decided March 5, 1981.

Daniel W. Shoemaker (argued), Shoemaker, Thompson & Nese, York, Pa., for appellant.

Carlon M. O'Malley, Jr., U. S. Atty., Frederick E. Martin (argued), Asst. U. S. Atty., Lewisburg, Pa., for appellee.

Before WEIS and HIGGINBOTHAM, Circuit Judges, and DEBEVOISE, District Judge.*

*The Honorable Dickinson R. Debevoise, of the United States District Court for the District of New Jersey, sitting by designation.

## OPINION OF THE COURT

DEBEVOISE, District Judge.

The district court granted defendant Carroll Leppo's motion for a mistrial for the reason that a government witness referred in his testimony to Leppo's refusal to answer certain questions during an interrogation by a Federal Bureau of Investigation agent. Thereafter, the court denied Leppo's motion to dismiss the indictment on double jeopardy grounds and commenced a second trial. Leppo appeals from that order. We hold that the reprosecution of a defendant who has successfully moved for a mistrial is not barred by the Double Jeopardy Clause of the Fifth Amendment so long as the government did not act intentionally to provoke the mistrial request. In this case the government did not intentionally provoke its witness to testify as to Leppo's refusal to answer certain questions when the witness interrogated him before trial, and consequently we affirm the order of the district court.

### I.

In March, 1980, a grand jury indicted Leppo, charging him in two Counts of violating the Hobbs Act, 18 U.S.C. § 1951. Leppo pled not guilty and the case was scheduled for trial.

Immediately prior to the trial on June 16, 1980, the district court conducted a hearing outside the presence of the jury on Leppo's motion to exclude statements Leppo made to Special Agent Frank Cryan of the Federal Bureau of Investigation following a polygraph examination conducted by Cryan. The hearing established that Leppo had consented in writing to be interviewed and examined by means of the polygraph;[1] that on March 27, 1979, in the presence of Leppo's attorney and others, Cryan conducted the interview and polygraph examination and that Cryan made handwritten notes of the questions and responses and of questions which Leppo declined to answer.

1. The consent form provided, among other things, that "I [Leppo] understand that I can stop this interview and polygraph examination at any time."

Referring to his notes, Cryan testified at the suppression hearing that following the polygraph examination Leppo admitted that it had been improper for him to accept certain money but he did anyway; that the purpose of the payment was to influence his vote, and that he told the donor of the money that he planned to apply the money to his campaign debts. At that point Cryan further testified, without objection, as follows:

Then in the presence of Mr. Shoemaker, I asked him when he got the money and he answers, no. I asked him where and he said no, and I asked him how much, and he said, no. And I asked him who else there, and he says, no. The no's indicating that he did not want to discuss that, going back to the earlier agreement as to what we could ask him. (Appellant's App., at 47a.)

After the suppression hearing the district court concluded that the evidence did not support Leppo's contentions that the law enforcement personnel had failed to advise him properly of his Fifth Amendment rights and that the government had assured him that his statements would not be used against him. Leppo's motion to exclude these statements was denied.

At the trial which followed the suppression hearing Cryan was the government's last witness. On direct examination he was asked about the March 27, 1979 interview (omitting, of course, any reference to the polygraph examination). The government posed the question, "Will you tell the Court and the jury precisely what Mr. Leppo stated to you, if you recall?" Referring to his notes, Cryan recited the statements which Leppo had made, but instead of limiting himself to the substance of those statements he went on to testify, "We then asked him some other questions dealing with when the request, or when the offer and the transfer was made, where it was made, how much money was involved and who else was present, to which Mr. Leppo indicated he desired not to answer." (Appellant's App., at 76a.)

Leppo's attorney immediately moved for a mistrial on the ground that a government witness may not testify as to a defendant's refusal to answer questions. The court reserved decision on the motion. Cryan was cross-examined and thereafter the government rested.

Leppo then renewed his motion for a mistrial and also moved for a judgment of acquittal. The district court denied the latter motion, but relying on *United States v. Williams*, 556 F.2d 65 (D.C.Cir.1977), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977), and *United States v. Ghiz*, 491 F.2d 599 (4th Cir. 1974), granted the motion for a new trial, concluding that Cryan's testimony that Leppo declined to answer certain questions during the March 27, 1979 interrogation constituted a violation of Leppo's Fifth Amendment rights. The district court scheduled a new trial.[2]

■ In August, 1980, prior to the commencement of the new trial, Leppo moved to dismiss the indictment on the ground that his retrial would constitute double jeopardy. The district court denied the motion, finding "that the Government's conduct cannot be classified as either grossly negligent or reckless". Leppo appealed to this Court from the district court's order denying his motion, treating the order as a final decision within the meaning of 28 U.S.C. § 1291, *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).[3]

2. The posture of the case as presented to us on appeal does not require that we determine whether the district court's ruling on the constitutional issue was correct.

3. Notwithstanding the appeal, the district court concluded that Leppo's double jeopardy claim was frivolous and, on the authority of *United States v. Dunbar*, 611 F.2d 985 (5th Cir. 1980) (en banc), retained jurisdiction in order to proceed with the second trial. This Court denied Leppo's motion for a stay of the district court proceeding and his petition for a writ of mandamus directed to the district judge, *United States v. Leppo*, 634 F.2d 101 (3d Cir. 1980). The second trial resulted in a judgment of conviction which is presently before this Court on appeal (No. 80-2528). Until that appeal is finally determined, however, it cannot be said that the present appeal is moot.

## II.

Leppo contends that at the time of the first trial the government knew or should have known that Cryan was prepared to testify that Leppo had elected not to answer certain questions during his interrogation. The government, Leppo argues, was alerted by the fact that Cryan's notes of the interview set forth these refusals and by the fact that Cryan had so testified at the suppression hearing. Leppo urges that, armed with this information, the government had a duty to insure that Cryan not give impermissible testimony and to phrase its questions so that there would be no risk that Cryan would stray beyond the proper limits. Leppo characterizes the government's failures to perform this duty as gross negligence, constituting such prosecutorial misconduct as to bar a retrial on double jeopardy grounds, citing for authority this Court's opinion in *Government of the Virgin Islands v. Scuito*, 623 F.2d 869 (1980).

The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishment or repeated prosecutions for the same offense. *United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1078, 47 L.Ed.2d 267 (1976). The Clause, however, does not always bar a new trial after a mistrial has been declared. Where the mistrial is not requested by the defendant a retrial is permitted if there is a manifest necessity for the mistrial or the ends of public justice would otherwise be defeated. *Id.* at 607, 96 S.Ct. at 1079. Where the defendant requests the mistrial, ordinarily a retrial is not barred *unless* "the underlying error was 'motivated by bad faith or undertaken to harass or prejudice.'" *Lee v. United States*, 432 U.S. 23, 33, 97 S.Ct. 2141, 2147, 52 L.Ed.2d 80 (1977).

In *Scuito* this Court considered whether the Double Jeopardy Clause barred a new trial after a mistrial had been declared on defendant's motion because of certain prejudicial questions asked by the prosecutor. The facts were analyzed under the *assumption* that the standard for review was prosecutorial misconduct amounting to "gross negligence" as suggested by the defendant in that case, or "recklessness" as suggested by the government.[4] The court held that applying either standard a retrial was permissible in that case. This Court, however, questioned the government's concession that "recklessness was sufficient to bar reprosecution, rather than arguing from the Supreme Court cases that intentional, bad faith misconduct was required". *Id.* at 873, n. 9. Although the Court analyzed the case under the proffered standards, it specifically declined to adopt them as precedent.

The United States Supreme Court has held consistently that the standard to be applied in determining whether the Double Jeopardy Clause bars a retrial after a defendant seeks and obtains a mistrial is not gross negligence or recklessness but, rather, whether the government "intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions". *United States v. Dinitz, supra*, 424 U.S. at 611, 96 S.Ct. at 1081. In *Lee v. United States, supra*, the Court used the language "motivated by bad faith or undertaken to harass or prejudice", 432 U.S. at 33, 97 S.Ct. at 2147. The same thought was expressed in the Supreme Court's most recent pronouncement on the subject: "... reprosecution of a defendant who has successfully moved for a mistrial is not barred, so long as the Government did not deliberately seek to promote the mistrial request", *United*

---

4. The Court stated in *Scuito* that "[t]he practical difference between 'gross negligence' and 'recklessness' is not always clear, although both connote a more extreme departure from a reasonable standard of conduct than does 'mere negligence,' which is clearly insufficient to preclude reprosecution." The Court assumed, for the purposes of that case, "that a significantly lower level of egregiousness could be termed gross negligence but not recklessness" and stated that "[i]ntention as to result is irrelevant to both concepts ... Rather, the distinguishing characteristic to the extent one may be found, seems to be whether or not the indifference to a prescribed standard of conduct was conscious or intentional." *Id.* at 872–73 and n. 10.

*States v. DiFrancesco,* —— U.S. —— at ——, 101 S.Ct. 426, at 433, 66 L.Ed.2d 328 (1980).

This Circuit has adopted this standard when determining whether a mistrial sought by a defendant bars a new trial. A new trial is barred only if the mistrial was occasioned by "intentional misconduct by the Court or prosecution", *United States v. DiSilvio,* 520 F.2d 247, at 250 (3d Cir. 1975), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975).

In the present case the district court on two occasions made findings as to the government's conduct which occasioned the mistrial. In its order denying Leppo's motion to dismiss the indictment it stated that "the Court cannot conclude that the prosecutor's conduct was either grossly negligent or reckless". In its order setting a trial date notwithstanding the pendency of this appeal the district court found "that the statement by the witness F.B.I. Agent Cryan ... was inadvertent and not the result of bad faith [*i. e.,* intentional] or reckless or grossly negligent conduct by the Government". Thus the district court applied all three standards and found that a new trial was not barred by even the most stringent of them.

 The finding that Cryan's improper testimony was not the result of bad faith or intentional conduct by the government has ample support in the record. While it would have been better practice for the government's attorney to have warned F.B.I. Agent Cryan before he took the stand at the trial not to refer to Leppo's refusal to answer certain questions, there is nothing to suggest that the government intended to elicit such testimony in order to force a new trial upon Leppo. Further, there is no apparent reason why the government would have wished to produce this result.

5. Leppo also urged that failure of the district court to rule on his motion for a new trial until after the government completed its case bars a retrial. Leppo cannot have been prejudiced in

### III.

 Cryan's improper testimony was, as the district court found, inadvertent. That being the case, a new trial was not barred by the Double Jeopardy Clause, and the district court's order denying Leppo's motion to dismiss the indictment will be, therefore, affirmed.[5]

any way by the procedure followed by the district court, and utilization of such procedure is not a ground for reversal.