**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Harry CANNON, Defendant-Appellant.**

**Nos. 81–2072, 81–2508.**

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1983.

Decided Aug. 29, 1983.

Rehearing and Rehearing En Banc Denied Sept. 26, 1983.

Certiorari Denied Jan. 9, 1984. See 104 S.Ct. 716.

James D. Montgomery, James D. Montgomery & Assc., Chicago, Ill., for defendant-appellant.

Susan Bogart, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER and POSNER, Circuit Judges, and JAMESON, Senior District Judge.\*

BAUER, Circuit Judge.

Defendant-appellant Harry Cannon (Cannon) was convicted of narcotics-related offenses following a jury trial in the United States District Court for the Northern District of Illinois. On this direct appeal Cannon challenges both the district court's jurisdiction over his trial and the judgment of conviction in which that trial culminated.[1] We hold that the district court did have jurisdiction in this case. Additionally, we hold that Cannon has failed to present any meritorious challenge to the trial proceedings. Accordingly, we affirm Cannon's conviction.

I .

Cannon was one of eleven persons charged by a federal grand jury, on October 21, 1980, with violations of 21 U.S.C. §§ 841(a)(1), 846, and 848.[2] Cannon was named in two counts of the seven-count indictment. Count One charged Cannon and Charles W. Wilson (C.W.) with conducting a continuing criminal enterprise. The enterprise was described in the indictment as a narcotics business which involved possession and distribution of heroin and cocaine. Count One also sought recovery of the ill-gotten gains of this criminal venture through forfeiture of automobiles and real estate belonging to C.W. and Cannon.

Count Two charged Cannon and the other ten defendants with conspiracy in relation to this narcotics business. The indictment described the structure of this conspiracy; Cannon and C.W. were charged with controlling the business by procuring the drugs, establishing and maintaining distribution and record-keeping procedures, and distributing the business' proceeds to its "salaried" employees.

On January 30, 1981, one of the other defendants, Howard Love (Love), entered a plea of guilty to Count Two of the indictment. Under the term of Love's plea agreement, Love agreed to testify for the government against the remaining ten de-

---

\* The Honorable William J. Jameson, Senior Judge for the United States District Court for the District of Montana, sitting by designation.

1. Cannon's appeal on jurisdictional grounds, Appeal No. 81–2072, was consolidated by this court with the appeal from his conviction, Appeal No. 81–2508, on September 28, 1981.

2. The indictment also charged one of the defendants, Charles W. Wilson, with willful failure to file federal income tax returns for 1974, 1975, and 1976. That charge has no relevance in the context of Cannon's appeal.

fendants. In exchange, the government agreed to make no specific recommendation as to Love's sentence and to make the extent of Love's cooperation known to the sentencing judge.

The remaining ten defendants, including Cannon, pled not guilty; the case against them was tried to a jury during February and March of 1981. At the close of that trial, on March 31, 1981, the jury returned guilty verdicts with respect to nine of the ten defendants.[3] The jury, however, could not agree on a verdict with respect to the charges against Cannon. The trial judge accordingly declared a mistrial as to Cannon.

On May 28, 1981, Cannon filed a motion to dismiss the indictment against him; the motion urged that the fifth amendment double jeopardy provision[4] barred a retrial of the case against Cannon. The trial court denied Cannon's motion on July 6, 1981. Also on July 6, Cannon filed a Notice of Interlocutory Appeal from the district court's denial of his double jeopardy motion.

Cannon's second jury trial began that same day. The jury verdict, returned on July 14, 1981, found Cannon guilty as charged; nonetheless, the jury declined to order forfeiture of Cannon's property as listed in Count One.

The trial court subsequently sentenced Cannon to a twenty-year period of incarceration on Count One, and a concurrent term of fifteen years for Count Two. Consecutive fines of $25,000 were imposed on each count. Thus, Cannon was sentenced to a total period of incarceration of twenty years and was fined a total of $50,000. Sentence was stayed pending this appeal; our jurisdiction is based on 28 U.S.C. § 1291.

## II

Cannon raises five arguments for consideration on appeal. First, Cannon asserts that the district court improperly admitted Cannon's post-arrest statements into evidence in violation of his fifth and sixth amendment rights. Second, Cannon contends that the district court improperly limited his attempt to impeach the credibility of the chief prosecution witness. Cannon's third claim is that the district court committed reversible error by allowing the prosecution to elicit certain testimony during its cross-examination of C.W. Wilson. Cannon next contends that his conviction must be vacated because the district court lacked jurisdiction to retry him during the pendency of his double jeopardy appeal. Finally, Cannon asserts that his right to a fair trial was derogated by the district court's refusal to order the prosecution to immunize a defense witness.

## III

We turn first to Cannon's claim that the district court lacked jurisdiction to proceed with his retrial. This claim, if successful, would be dispositive of Cannon's appeal and would obviate any need to consider the trial errors alleged by Cannon.

Cannon, citing *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), asserts that the "denial of a pre-trial Motion to Dismiss on double jeopardy grounds is a final order within 28 U.S.C. Sec. 1291 and is, therefore, immediately appealable." Br. of Appellant at 48. On that basis, Cannon argues that the mere filing of his Notice of Appeal stripped the district court of jurisdiction over Cannon's retrial. We disagree.

The *Abney* Court stressed that a motion to dismiss on double jeopardy grounds justifies a departure from the normal rule of finality only because the full protection of the double jeopardy clause cannot be achieved unless the criminal defendant is protected from exposure to a second trial. 431 U.S. at 662–63, 97 S.Ct. at 2041–42. Thus, while the court of appeals may exercise jurisdiction over an appeal from a pre-

---

**3.** The convictions of these nine defendants subsequently were appealed and have been affirmed by this court. *See United States v. Wilson,* 715 F.2d 1164 (7th Cir.1983).

**4.** "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb ...." U.S. Const. amend. V.

trial refusal to dismiss an indictment on double jeopardy grounds, other claims presented to, and rejected by, the trial court acting on the motion to dismiss are not subject to immediate appeal unless such claims fall within some other collateral-order exception to the final judgment rule. "Any other rule would encourage criminal defendants to seek review of, or assert, frivolous double jeopardy claims in order to bring more serious, but otherwise nonappealable questions to the attention of the courts of appeals prior to conviction and sentence." *Id.* at 663, 97 S.Ct. at 2042.

In the case before us, Cannon styled his motion as a motion to dismiss on double jeopardy grounds. That motion, however, was based on allegations of prosecutorial misconduct; Cannon alleged that such misconduct had deprived him of a fair trial and led to the jury's inability to reach a verdict. For that reason Cannon urged that a second trial would abrogate his right to be free from double jeopardy.

We believe that Cannon's motion, whatever he chose to title it, was an attempt to interpose his due process claim to bar retrial. That attempt must fail. The denial of a motion to dismiss an indictment on the basis of prosecutorial misconduct is neither a final appealable order nor a proper subject for interlocutory appeal. *United States v. Rosario,* 677 F.2d 614 (7th Cir. 1982); *United States v. Rey,* 641 F.2d 222 (5th Cir.1981).

■ We must next decide whether Cannon's mere filing of a Notice of Appeal, albeit from a nonappealable order, was sufficient to divest the district court of jurisdiction over his retrial. The general rule is that an appeal suspends the district court's power to proceed further in a cause. This rule, however, has no application where there is a purported appeal from a nonappealable order. *United States v. Bastanipour,* 697 F.2d 170, 173 (7th Cir.1982). Thus, where a defendant's motion to dismiss on double jeopardy grounds is frivolous or fails to raise a colorable claim of double jeopardy, the mere filing of a Notice of Appeal is insufficient to divest the district court of jurisdiction. *United States v. Dunbar,* 611 F.2d 985 (5th Cir.) (en banc), *cert. denied,* 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980). Rather, we agree with the Third Circuit that

> an appeal from the denial of a double jeopardy motion does not divest the district court of jurisdiction to proceed with trial, if the district court has found the motion to be frivolous .... [B]oth the district court and court of appeals shall have jurisdiction to proceed. Thus the defendant is entitled ultimately to appellate review.

*United States v. McQuilkin,* 673 F.2d 681, 687 (3d Cir.1982) (*quoting United States v. Leppo,* 634 F.2d 101, 105 (3d Cir.1981)).

■ In this case the district court properly found Cannon's motion to dismiss the indictment frivolous because the allegations of prosecutorial misconduct on which it was based had been twice considered and rejected by the trial judge.[5] Moreover, we note that the substantive allegations of prosecutorial misconduct contained in Cannon's motion have been considered and rejected by this court. *See United States v. Wilson,* 715 F.2d 1164, 1169–1170 (7th Cir.1983). Accordingly, we hold that the district court acted properly in proceeding with Cannon's retrial.[6]

## IV

■ We next consider Cannon's argument that the district court erred by admit-

---

**5.** *See generally United States v. Wilson,* 715 F.2d 1164, 1169–1170 (7th Cir.1983).

**6.** We note that this court's order of September 28, 1981, joined the question of whether Cannon's "double jeopardy" appeal had been mooted by his retrial with the merits of his claim. Generally, an appeal is dismissed as moot when events subsequent to the filing of that appeal preclude the appellate court from granting effective relief. This is not such a case. Had we found merit in Cannon's "double jeopardy" claim, relief could have been granted in the form of a vacation of his conviction; moreover, the indictment could have been quashed. Accordingly, we hold that until an appeal from a defendant's conviction has been finally determined, the appeal from a denial of a double jeopardy motion is not moot. *See United States v. Leppo,* 641 F.2d 149, 151 n.3 (3d Cir.1981).

ting Cannon's post-arrest statements into evidence. Cannon argues first that the district court's factual findings that his fifth amendment right to counsel had not been violated were insufficient. Second, Cannon asserts that the district court failed to give adequate independent consideration to Cannon's claim that his sixth amendment right to counsel had been violated. Both of these assertions are meritless.

Cannon was arrested at his home on October 27, 1981. One of the arresting officers read Cannon his rights from a pre-printed card. Cannon indicated that he understood his rights and was willing to talk to the police. Later, when the officers were transporting Cannon to the offices of the Drug Enforcement Agency, one of the officers offered Cannon a copy of the indictment and told Cannon that the indictment was the basis for his arrest. A conversation between Cannon and the officers ensued during which Cannon made certain incriminating statements.

At both the first and second trials, Cannon sought to suppress these statements. He argued first that the government had failed to establish that Cannon had knowingly waived his *Miranda* rights—a fifth amendment violation—and, second, that Cannon's sixth amendment right to counsel had been violated because the officers engaged him in conversation without notice to counsel.

The district court denied Cannon's motion to suppress; it found that Cannon had been given the *Miranda* warnings and had acknowledged his understanding of them before making any statement. The district court also found that Cannon had not been interrogated except as to whether he wanted a copy of the indictment, and that Cannon's statements in the car therefore constituted a voluntary waiver of his rights.

These factual findings, which were supported by substantial evidence, provided an adequate basis for the district court's conclusion that Cannon's fifth amendment rights had not been violated.

■ Cannon argues, however, that even if there was no fifth amendment violation, his statements should have been suppressed because his sixth amendment right to counsel was violated. On appeal, Cannon further asserts that the district court erred by not giving adequate, independent consideration to his sixth amendment claim.

We believe that the district court's factual findings and conclusions sufficiently addressed Cannon's concerns under both amendments. The sixth amendment protects a defendant who has expressed a desire for counsel from the deliberate elicitation of statements in the absence of such counsel. *See Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Thus, while it is true, as Cannon asserts, that the district court made no express factual finding as to whether Cannon had requested counsel, we do not find this dispositive under the circumstances of this case. The district court did expressly find that no statements had been deliberately elicited from Cannon. Accordingly, it was not error for the district court to conclude that there had been no sixth amendment violation, and that Cannon's post-arrest statements were admissible.

V

■ Cannon also claims that the district court committed reversible error by allowing the prosecution to elicit certain testimony during its cross-examination of C.W. Wilson. The trial court, of course, is afforded considerable latitude in its control of cross-examination; that court's evidentiary rulings will not be disturbed on appeal unless there is a clear showing of abuse of discretion. *United States v. West,* 670 F.2d 675 (7th Cir.1982). No such abuse was shown in this case.

The prosecution cross-examined C.W. Wilson about his involvement in the narcotics business. Cannon's specific complaint is that the government questioned Wilson improperly about items which the trial court had previously suppressed as improperly seized.[7] Cannon also asserts error in the

---

7. The items were photographs of 850 bags of narcotics seized in a raid at 1618 South Christi-

ana and $55,000 in cash seized from Wilson.

government's questioning of Wilson with regard to his conviction for offenses arising out of the same indictment as Cannon had been charged under.

As to the questions concerning Wilson's conviction, we need. look no further than defense counsel's own elicitation of testimony from Wilson. On direct examination defense counsel established that Wilson had been named in the same indictment as Cannon. Thus, the government's cross-examination in this matter, which went to clarifying Wilson's status as a codefendant, were properly limited to a subject matter raised on direct. Moreover, defense counsel made no contemporaneous objection to this line of questioning. Under these circumstances, we find Cannon's assertion of error to be totally without merit.

Similarly, we find no merit in Cannon's contention that Wilson was improperly questioned about evidence suppressed by the court. On direct examination defense counsel elicited testimony from Wilson implying that only gambling activities occurred at 1618 South Christiana, and that Cannon therefore had no involvement in the narcotics business. Given Wilson's testimony on direct examination, the government was entitled, in cross-examining Wilson, to inquire generally into large sums of money and quantities of narcotics kept at the Christiana address. Moreover, the government's questions were properly limited to refuting the inference that gambling was Cannon's sole link to Wilson.

For the foregoing reasons we find that the government's cross-examination of Wilson was not improper. Accordingly, the district court did not abuse its discretion by permitting that questioning.

## VI

Cannon's final arguments concern the district court's refusal to allow impeachment of government-witness Howard Love through admission of Love's pre-1965 convictions, and the district court's refusal to order the government to confer immunity on a certain defense witness who asserted testimonial privilege. These same claims were raised, considered, and rejected in *United States v. Wilson,* 715 F.2d 1164, 1173 (7th Cir.1983). For the reasons stated in *Wilson,* we reject Cannon's claims as meritless.

We have examined each of Cannon's arguments and find that none has merit. Accordingly, the judgment of conviction entered by the district court in Cannon's cause is

AFFIRMED.