THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* THOMAS J. BENDA, Defendant-Appellee.

Second District   No. 2—83—0565

Opinion filed June 13, 1984.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Thomas L. Knight, and Michael J. Higgins, Assistant State's Attorneys, of counsel), for the People.

Stephen J. Culliton, of Civinelli, Bakalis & Culliton, of Bloomingdale, and Joseph M. Laraia & Associates, of Wheaton, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The State appeals from a midtrial ruling in a bench trial excluding certain evidence, pursuant to Supreme Court Rule 604(a)(1) (87 Ill. 2d R. 604(a)(1)), contending that the ruling had the substantive effect of suppressing evidence. Following the ruling the State filed a notice of appeal. Finding that the question was purely evidentiary and that the order was not appealable, the trial judge ordered the State to continue with the trial and, when it refused, granted the defendant's motion for a directed finding of not guilty. The State contends that the judgment was a nullity and seeks to remand the case for resumption of trial.

The defendant, a practicing attorney in Wheaton, Illinois, along with Richard A. Heidecke, Jr., an attorney and hearing officer with the Secretary of State's office, were charged by indictment with the offenses of bribery, official misconduct, conspiracy to commit bribery and conspiracy to commit official misconduct. Ill. Rev. Stat. 1981, ch. 38, pars. 8—2, 33—1(d), (e); Ill. Rev. Stat., 1982 Supp., ch. 38, pars. 33—3(c), (d).

Defendant had represented Ronald Seick in an implied consent hearing in which a finding of probable cause was entered, resulting in the suspension of Seick's driver's license. Seick contacted defendant after he received notice of his suspension; defendant informed Seick that defendant's law associate's cousin, Richard A. Heidecke, Jr., was a hearing officer with the Secretary of State's office and that defendant had already spoken to Heidecke about Seick. On the recommendation of defendant, Seick called Heidecke.[1]

At trial, Seick, the State's second witness, testified that defendant had provided him with Heidecke's phone number and that Seick then called Heidecke immediately. When the State asked Seick to re-

---

[1]We note that, prior to trial, the State filed a motion *in limine* "to permit use of certain statements of co-defendant Richard A. Heidecke, Jr., in evidence against the defendant in the instant case ***." No hearing was held and no pretrial order was entered on the motion.

call his conversation with Heidecke, the defense objected on the basis that, in order to bring into evidence the statements and acts of a coconspirator, the State must first establish a *prima facie* case of conspiracy by the independent acts of the defendant himself. Seick was allowed to leave the stand, and the defense then argued in support of its objection, after which the judge concluded that there was an insufficient foundation to establish a *prima facie* showing of a conspiracy between defendant and Heidecke. The court ruled that the conversations between Seick and Heidecke were inadmissible at that time.

The State then recalled Seick. However, objections to its attempts to question him were sustained, the court noting that there was no evidence that defendant "agreed with anybody to do anything."

At that point, the State made an offer of proof as to the following: One day after the suspension of his driver's license went into effect, Seick received a phone call from Heidecke who said he could get Seick a temporary license for a fee of $1,500; Heidecke arranged to have Seick's hearing set for a date in which Heidecke would be the presiding hearing officer; Heidecke and Seick set up a meeting at which Heidecke explained to Seick that he would receive a temporary permit if he paid a fee of $1,500, a portion of which was to be paid at the present time; Seick went to the meeting wearing a transmitter; Seick tendered payment of $600 in marked bills to Heidecke and Heidecke accepted it; and Heidecke told Seick that defendant knew what was going on.

The State presented several more witnesses seeking to establish Heidecke's acts, and the court sustained the defendant's objections to the evidence.

Following a brief recess, the assistant State's Attorney presented a certificate of impairment and a notice of appeal, claiming that the cumulative effect of the court's ruling substantially impaired the State's ability to prosecute the case. The notice of appeal stated that the State was appealing from "orders suppressing statements and reference to acts of co-conspirator Richard A. Heidecke." The State refused to participate further in the proceedings, the court declared that the State had rested its case, and defendant moved for a directed finding. The court entered a directed finding of acquittal and discharged the defendant.

Defendant characterizes the trial court's action as strictly an evidentiary matter based on relevancy, materiality or hearsay. He argues that such an adverse evidentiary ruling is not appealable by the State merely because it may have affected the State's ability to pros-

ecute.

The State's position is that the court's ruling had the effect of suppressing evidence, that its case was thereby substantially impaired, and that the court's ruling must be subject to review, under the authority of *People v. Flatt* (1980), 82 Ill. 2d 250. It argues that if the court had ruled prior to trial on the State's motion *in limine*, that ruling could be appealed. Further, the State submits that since the defendant had the opportunity to file a motion *in limine* prior to trial to obtain a ruling on the objectionable evidence, his failure to do so was an attempt to prevent the State from pursuing an appeal of the court's ruling and should not be allowed. The State concludes that, consequently, the trial court should not have entertained the defendant's midtrial motion.

The initial inquiry is whether the interlocutory appeal is properly taken, which depends, in turn, on whether the ruling of the trial court had the substantive effect of "suppressing evidence," as that term is used in Supreme Court Rule 604 (87 Ill. 2d R. 604).

We have recently considered the difficulty of distinguishing between evidentiary rulings and suppression orders, and have concluded that a midtrial order suppressing evidence does not include orders which exclude evidence on the basis of "the recognized rules concerning the admission of evidence." (*People v. Johnson* (1983), 113 Ill. App. 3d 367, 373-74.) We have recently adhered to *Johnson.* See *People v. Rogers* (1984), 123 Ill. App. 3d 780.

As in *Johnson,* the ruling of the trial court was based wholly on evidentiary grounds, specifically on the relevancy of the State's offered proof seeking to establish a conspiracy between the defendant and the alleged codefendant. The trial court concluded that a *prima facie* case of conspiracy had not been established showing independent acts of the defendant. Whether the testimony was relevant and material when offered relates to the application of rules of evidence involving exceptions to the hearsay rule. Whether the ruling of the court was erroneous and whether, as the State contends, the statements were admissible as evidence related to the charges of bribery, cannot change the fact that the rulings were evidentiary and therefore not within the rule permitting the State to appeal during trial. The appeal must therefore be dismissed.

The State has also claimed that the trial judge had no authority to grant the defendant's motion for a directed finding of acquittal following the filing of the notice of appeal. As a general rule the filing of a notice of appeal is said to deprive the trial court of jurisdiction to rule on substantive matters affected by the appeal. (See, *e.g., City of*

*Chicago v. Myers* (1967), 37 Ill. 2d 470, 472; *People v. McBride* (1983), 114 Ill. App. 3d 75, 79.) We know of no direct authority in Illinois, however, which decides whether that rule applies where there is a purported appeal from a nonappealable order. Several Federal appellate court opinions have concluded that an appeal from a nonappealable order does not deprive the trial court of jurisdiction. (See *United States v. Garner* (9th Cir. 1981), 663 F.2d 834, 837, *cert. denied* (1982), 456 U.S. 905, 72 L. Ed. 2d 161, 102 S. Ct. 1750; *United States v. Cannon* (7th Cir. 1983), 715 F.2d 1228, 1231, *cert. denied* (1984), 464 U.S. 1045, 79 L. Ed. 2d 178, 104 S. Ct. 716; *United States v. Bastanipour* (7th Cir. 1982), 697 F.2d 170, 173, *cert. denied* (1983), 460 U.S. 1091, 76 L. Ed. 2d 358, 103 S. Ct. 1790.) *Garner* reasoned that where it is clear to the trial court that a notice of appeal is deficient by reason of untimeliness, lack of essential recitals or reference to a nonappealable order, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction since the deficient notice of appeal does not transfer jurisdiction to the appellate court. (*United States v. Garner* (9th Cir. 1981), 663 F.2d 834, 837.) In *Cannon,* the court noted that the mere filing of a notice of appeal with reference to a frivolous motion or one which failed to raise a colorable claim of double jeopardy did not divest the trial court of jurisdiction to proceed with the trial, and that both the trial court and the appellate court would have jurisdiction to proceed. (*United States v. Cannon* (7th Cir. 1983), 715 F.2d 1228, 1231.) We conclude that the reasoning of these cases is applicable here.

The appeal from the judgment of the circuit court of Du Page County is dismissed.

Dismissed.

LINDBERG and VAN DEUSEN, JJ., concur.