UNITED STATES of America, Appellee,

v.

Riley S. WALLS, Sr., Appellant.

UNITED STATES of America,
Appellee/Cross–Appellant,

v.

Karen M. BLAKNEY, Appellant/Cross–
Appellee.

Nos. 94–3033 to 94–3037, 94–3054.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 11, 1995.

Decided Dec. 8, 1995.

---

1324

Robert S. Becker, Washington, DC, appointed by this court, argued the cause and filed the briefs for appellant Walls.

Barbara R. Miller, Washington, DC, appointed by this court, argued the cause and filed the briefs for appellant Jackson.

Robert Morin, Washington, DC, appointed by this court, argued the cause and filed the briefs for appellant/cross-appellee Campbell.

Peter M. Brody, Washington, DC, appointed by this court, argued the cause and filed the briefs for appellant/cross-appellee Blakney.

Barbara A. Grewe, Assistant United States Attorney, argued the cause for appellee/cross-appellant. With her on the briefs were Eric H. Holder, Jr., United States Attorney, John R. Fisher, Thomas J. Tourish, Jr., and Roy W. McLeese, III, Assistant United States Attorneys.

Before: WILLIAMS, SENTELLE, and RANDOLPH, Circuit Judges.

RANDOLPH, Circuit Judge:

The charges in this multi-count, multi-defendant drug prosecution stemmed from four transactions in which two undercover agents of the Drug Enforcement Administration purchased crack cocaine. The first trial ended in a mistrial, because of juror intimidation. The second trial resulted in the conviction of each of the four defendants. Riley Walls, who negotiated the deals and conducted the sales, received a mandatory life sentence pursuant to 21 U.S.C. § 841(b). So did Jerome Jackson, Walls' partner and the source of the cocaine. Karen "Cookie" Blakney, who converted powder cocaine into the crack cocaine, received three concurrent sentences of thirty-months' imprisonment, plus a term of supervised release. Charles "Frank" Campbell, who served the same function as Blakney, received two concurrent sentences of thirty-three months' imprisonment, plus a term of supervised release. All four defendants have appealed, asserting trial and sentencing errors. The government has cross-appealed the district court's refusal, on the basis of the Eighth Amendment, to apply the minimum sentences required by § 841(b) to Blakney and Campbell.

I

It would serve no useful purpose to begin with the customary narrative describing the four drug transactions, the negotiations that preceded them, and the activities of each defendant in the conspiracy. The issues relating to the trial may be dealt with summarily. To the extent necessary, we will fill in the facts as we go along. Part II of this opinion will deal with the sentencing issues raised by Walls and Jackson, and by the government in its cross-appeal of the sentences imposed on Blakney and Campbell.

■ *Campbell's Sixth Amendment Claim.* While two DEA agents, including one of the undercover agents, were booking Campbell, he incriminated himself. He started asking about his indictment, and wound up admitting that he cooked the crack cocaine. The district court denied Campbell's motion to suppress his statements, correctly rejecting his argument that the agents violated his Sixth Amendment right to counsel. The

agents elicited none of Campbell's incriminating remarks. *Compare Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964). They did not create an atmosphere designed to induce him to talk about his crimes. *Compare Brewer v. Williams*, 430 U.S. 387, 399, 97 S.Ct. 1232, 1239–40, 51 L.Ed.2d 424 (1977). Campbell initiated the conversation by asking to whom he allegedly sold the crack. He was told it was the undercover agent. He then asked how the DEA came up with his nickname "Frank." The undercover agent simply replied that Frank Campbell was known in southeast Washington. At that point, Campbell began trying to minimize his involvement in the offenses. He continued talking despite the agents' warning that he was entitled to have an attorney present. At no time did Campbell ask to speak with his lawyer. The case thus fits squarely within the line of decisions holding that officers do not violate a defendant's right to counsel when the defendant volunteers information about his offense while officers ask routine booking questions, *see, e.g., Robinson v. Percy*, 738 F.2d 214, 219 (7th Cir.1984), or inform the defendant of the indictment, *see, e.g., United States v. Cannon*, 715 F.2d 1228, 1232 (7th Cir.1983), *cert. denied*, 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 178 (1984).

■ *Campbell's Severance Motions.* The district court properly denied Campbell's motions for a severance. The evidence of Campbell's participation in the conspiracy was overwhelming. Campbell's co-defendants repeatedly acknowledged his participation in the conspiracy; the undercover agents observed Campbell cooking the crack; and Campbell himself admitted his criminal activities. There was no gross disparity in the evidence against Campbell as compared with the evidence against his co-defendants, certainly nothing approaching the imbalance needed before a reviewing court will set aside a district court's discretionary judgment under Federal Rule of Criminal Procedure 14 to hold a single trial. *See, e.g., United States v. Sampol*, 636 F.2d 621, 647 (D.C.Cir.1980); *United States v. Childress*, 58 F.3d 693, 715 n. 6 (D.C.Cir.1995); *United States v. Long*, 905 F.2d 1572, 1581

(D.C.Cir.), *cert. denied*, 498 U.S. 948, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990).

■ *The District Court's Designation of the Undercover Agents as Experts.* Jurors as well as judges often need help in deciphering the jargon of those engaged in the drug trade. *See, e.g., United States v. Hoffman*, 832 F.2d 1299, 1310 (1st Cir.1987); *United States v. Nersesian*, 824 F.2d 1294, 1308 (2d Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380, *and cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987), *and cert. denied*, 484 U.S. 1061, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988). This trial is a case in point. The government introduced lengthy audio tapes of conversations between the defendants and the undercover agents. Through what often appeared to be gibberish, punctuated with vulgarities, the participants were communicating with each other. In the aborted first trial, the district court treated the undercover agents, pursuant to Federal Rule of Evidence 706(a), as experts in translating some of the more arcane portions of the conversations, thus putting the defendants on notice that the court would do the same in the second trial, as it did. *See Scott v. Spanjer Bros.*, 298 F.2d 928, 931–32 (2d Cir.1962). We do not see how Walls, Blakney, and Campbell were prejudiced by what they see as erroneous appointments. That the agents' "specialized knowledge" would "assist the trier of fact to understand the evidence" (FED.R.EVID. 702) is beyond doubt. The agents conducted one side of the conversations and were trained in the language of the trade. Without their help, the jury might not have been able to understand such phrases in the recorded exchanges as: "shake" [cocaine]; "ready to shake out" [ready to purchase]; "rock it up" [transform cocaine powder into cocaine base]; "little runners" [individuals working for drug dealers]; "put some heat on that" [cook the cocaine]; "slice them joints up" [cutting the cocaine base]; "about eight pairs of shoes on it" [cocaine of a quality that could be cut eight times]. Walls, at least, concedes that the agents could have given their interpretation of these and other such remarks even if they had not been designated as experts. *See* FED.R.EVID. 701. To the extent the agents translated portions of the tapes the

jurors could have understood without assistance, the defendants were not harmed. None of the defendants identifies any instance in which the agents purportedly misinterpreted their own remarks or the remarks of the defendants.[1]

■ *Admission of the August 23 Audiotape.* Campbell, Jackson, and Walls challenge the district court's ruling admitting an audiotape of an August 23, 1991, telephone conversation between one of the undercover agents and Blakney, in which Blakney identified Campbell and Jackson as members of the conspiracy and warned that Campbell could not be trusted. While there is severe doubt whether the defendants properly objected to the tape's admission, in which event we could reverse only for plain error, we will not pause over the standard of review. No error was committed. The tape consists of non-hearsay statements of a co-conspirator, properly received into evidence pursuant to Federal Rule of Evidence 801(d)(2)(E). Contrary to what these defendants tell us, Blakney's statements giving background information on key players and cautioning about other co-conspirators were "in furtherance of the conspiracy," as the rule demands. *See United States v. Edmond,* 52 F.3d 1080, 1111 (D.C.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 539, 133 L.Ed.2d 443 (1995). Another condition of admissibility in Rule 801(d)(2)(E) is that the statements were made "during the course" of the conspiracy. This too was satisfied. Co-conspirators remain members of conspiracies until they withdraw, an act requiring either "the making of a clean breast to the authorities or communication of the abandonment in a manner reasonably calculated to reach co-conspirators." *United States v. Borelli,* 336 F.2d 376, 388 (2d Cir. 1964) (Friendly, J.) (citations omitted), *cert. denied,* 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965); *see also United States v. Weisz,* 718 F.2d 413, 435 n. 132 (D.C.Cir. 1983), *cert. denied,* 465 U.S. 1027, 104 S.Ct. 1285, 79 L.Ed.2d 688, *and cert. denied,* 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 704 (1984); *United States v. Mardian,* 546 F.2d

973, 978 n. 5 (D.C.Cir.1976). Blakney did neither. Far from disavowing the conspiracy, she asked the undercover agent to try to keep her involved by convincing Walls to use her to cook more cocaine. That Blakney had not withdrawn from the conspiracy when she made her August 23 statements is further supported by the meeting earlier on the same day between the undercover agents and Jackson and Blakney, during which Jackson still referred to Blakney as his cooker. To be sure, Walls had expressed his distrust of Blakney on four prior occasions and, before August 23, had twice told the agents that Campbell had replaced Blakney as the cooker. But even if the other co-conspirators had considered expelling Blakney from the conspiracy, she remained a member because she remained loyal to the conspiracy and made no affirmative attempt to withdraw. *United States v. Haldeman,* 559 F.2d 31, 111 n. 219 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

■ *The Rule 404(b) Contention Regarding Portions of the Tapes.* The remaining trial error, according to Walls and Blakney, is the district court's failure to exclude portions of the audiotaped conversations between the undercover agents and Walls on the ground that these constituted improper character evidence under Federal Rule of Evidence 404(b). It is not clear whether defense counsel made a proper Rule 404(b) objection, but it is entirely clear that the admission of this evidence was harmless even if it was erroneous. *See* FED.R.CRIM.P. 52(a). Given the overwhelming proof against Blakney and Walls, the case fits within our holding that an erroneous Rule 404(b) ruling is harmless if "the case is not close." *United States v. Miller,* 895 F.2d 1431, 1438 (D.C.Cir.) (citing *United States v. Hernandez,* 780 F.2d 113, 119 (D.C.Cir.1986)) (internal quotations omitted), *cert. denied,* 498 U.S. 825, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990).

---

1. Defendants do not raise, and we therefore do not decide, the question whether it is proper for a single person to testify both as an expert witness and as a fact witness. *See United States v.*

*Spriggs,* 996 F.2d 320, 325 (D.C.Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 359, 126 L.Ed.2d 323 (1993).

## II

This brings us to the questions regarding sentencing, of which there are three.

### A

■ The first question, raised by Walls and Jackson, is whether the life sentences imposed on them violated the cruel and unusual punishment clause of the Eighth Amendment to the Constitution.

Walls had 15 prior convictions; more than two were drug felonies. He therefore received, pursuant to 21 U.S.C. § 841(b), the mandatory minimum of life imprisonment for his convictions on one count of conspiracy to distribute 50 grams or more of cocaine base (21 U.S.C. § 846) and on three counts of distributing cocaine base in that amount (21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii)). Jackson was sentenced for his convictions on one count of conspiracy to distribute cocaine base (21 U.S.C. § 846) and two counts of distribution (21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii)). Jackson had three prior drug felony convictions, and thus received the same sentence as Walls. *United States v. Walls,* 841 F.Supp. 24, 26 (D.D.C.1994).

It could be argued, the Supreme Court said in *Rummel v. Estelle,* 445 U.S. 263, 274–76, 100 S.Ct. 1133, 1139–40, 63 L.Ed.2d 382 (1980), that for crimes punishable by significant terms of imprisonment, "the length of the sentence is purely a matter of legislative prerogative" "properly within the province of legislatures, not courts." *See also Hutto v. Davis,* 454 U.S. 370, 373–74, 102 S.Ct. 703, 704–06, 70 L.Ed.2d 556 (1982) (per curiam); *Harmelin v. Michigan,* 501 U.S. 957, 962–94, 111 S.Ct. 2680, 2684–2701, 115 L.Ed.2d 836 (1991) (opinion of Scalia, J., joined by Rehnquist, C.J.); *id.* at 996–1009, 111 S.Ct. at 2702 (Kennedy, J., joined by O'Connor & Souter, JJ., concurring in part and concurring in the judgment); *United States v. McLean,* 951 F.2d 1300, 1303 (D.C.Cir.1991), *cert. denied,* 503 U.S. 1010, 112 S.Ct. 1775, 118 L.Ed.2d 433 (1992). Despite the division in the Court in *Harmelin,* the Court sustained against an Eighth Amendment challenge a sentence of life imprisonment without parole imposed on a first-time offender convicted of possessing 672 grams of cocaine.

501 U.S. at 961, 111 S.Ct. at 2684. It follows that the life sentences imposed on Walls and Jackson—recidivist drug offenders convicted of selling 486 grams of cocaine base—were not cruel or unusual. As we said in *McLean,* 951 F.2d at 1303, the Eighth Amendment does not prohibit legislatures from combating "recidivism by imposing long sentences on criminals with a prior record."

### B

■ The second sentencing issue also relates to Walls and Jackson. They say that in light of the following evidence, they should have been sentenced as if they had distributed powder cocaine rather than crack cocaine.

One of the DEA undercover agents, pretending to be a heroin dealer, made six purchases of heroin from Walls in early 1991. The agent later introduced Walls to the other agent, who was posing as a crack cocaine dealer from Virginia interested in buying some crack from Walls. In late May 1991, the agents held several meetings with Walls to discuss the terms of the impending sale. Each time the agents insisted that the cocaine be in the form of crack cocaine. Walls agreed, saying he could get some "little youngen" to do the cooking. However, when Walls and the agents finally met to consummate this sale—the first of four transactions—Walls handed over a bag of cocaine powder, explaining that the person who was supposed to cook the cocaine had left. When the agents said they wanted crack cocaine, Walls called Blakney and arranged to have her turn the powder cocaine into crack. After Blakney completed the transformation, the agents paid Walls $2,800 for the crack and paid Blakney $100 for her work. During the next few months, the agents bought crack cocaine from Walls three more times without a hitch. Jackson was the source of the cocaine and Walls' partner in the deals.

At trial, one of the undercover agents explained on cross-examination why he had insisted on having crack cocaine rather than powder cocaine:

Well, crack cocaine is less expensive than [powder] cocaine, and we felt like through our investigation, that it takes fifty grams

of crack cocaine to get any target over the mandatory ten years.

The court struck the answer on the government's objection.

According to Walls and Jackson, what happened here constituted "sentencing entrapment." The theory appears to be that if the government induces a defendant to commit a more serious crime when he was predisposed to commit a less serious offense, the defendant should be sentenced only for the lesser offense. *United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir.1994); *United States v. Barth*, 990 F.2d 422, 424 (8th Cir.1993). Walls and Jackson ask us to concentrate on the agent's testimony that he insisted on crack rather than powder because the penalties are higher. But the Supreme Court has warned against using an entrapment defense to control law enforcement practices of which a court might disapprove. *United States v. Russell*, 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973); *see also Hampton v. United States*, 425 U.S. 484, 488–89, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (1976) (plurality opinion); *United States v. Whoie*, 925 F.2d 1481, 1483 (D.C.Cir.1991); *United States v. Kelly*, 748 F.2d 691, 697 n. 15 (D.C.Cir.1984).[2] The main element in any entrapment defense is rather the defendant's "predisposition"—"whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988) (quoting *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848

(1958)). Persons ready, willing and able to deal in drugs—persons like Walls and Jackson—could hardly be described as innocents. These defendants showed no hesitation in committing the crimes for which they were convicted. Alone, this is enough to destroy their entrapment argument. *Jacobson v. United States*, 503 U.S. 540, 549–50, 112 S.Ct. 1535, 1540–41, 118 L.Ed.2d 174 (1992). That they would have sold powder cocaine had the agents not negotiated for crack proves only that Walls and Jackson were predisposed to commit both offenses. Consider a defendant who agrees with an undercover agent to murder someone for a fee. Are we to suppose that if the defendant initially offered only to beat the person up, he should be sentenced as if that were his offense? Walls and Jackson distributed crack cocaine when given the chance. The punishment they deserve is for the crimes they actually committed, crimes they were surely predisposed to commit. *United States v. Montoya*, 62 F.3d 1, 4 (1st Cir.1995).

■ If the propriety of the agents' conduct had any significance, it would only be with respect to the following dictum in *Russell:* "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from involving judicial processes to obtain a conviction." 411 U.S. at 431–32, 93 S.Ct. at 1642–43. The Supreme Court, of course, was speaking about setting aside a defendant's conviction. *United States v. Baker*, 63 F.3d 1478, 1500 (9th Cir.1995). Whatever vitality the outrageous-conduct defense might have for that purpose,[3] and we

---

**2.** Over the years some Justices have favored shifting the focus of entrapment to government misconduct. *See Hampton v. United States*, 425 U.S. 484, 497, 96 S.Ct. 1646, 1653, 48 L.Ed.2d 113 (1976) (Brennan, J., dissenting); *United States v. Russell*, 411 U.S. 423, 441–43, 93 S.Ct. 1637, 1647–48, 36 L.Ed.2d 366 (1973) (Stewart, J., dissenting); *Sherman v. United States*, 356 U.S. 369, 380, 382–84, 78 S.Ct. 819, 824, 825–26, 2 L.Ed.2d 848 (1958) (Frankfurter, J., concurring); *Sorrells v. United States*, 287 U.S. 435, 457–59, 53 S.Ct. 210, 218–19, 77 L.Ed. 413 (1932) (Roberts, J., concurring). By 1988, even Justice Brennan "bow[ed] to *stare decisis* " and conceded that "the Court ha[d] spoken definitively on this point." *Mathews v. United States*, 485

U.S. 58, 67, 108 S.Ct. 883, 888, 99 L.Ed.2d 54 (1988) (Brennan, J., concurring); *see also* Fred W. Bennett, *From* Sorrells *to* Jacobson: *Reflections on Six Decades of Entrapment Law, and Related Defenses, in Federal Court*, 27 Wake Forest L.Rev 829, 837 n. 55 (1992).

**3.** Two circuits have rejected the defense altogether, *United States v. Boyd*, 55 F.3d 239, 241 (7th Cir.1995); *United States v. Tucker*, 28 F.3d 1420 (6th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1426, 131 L.Ed.2d 308 (1995), and it has been seriously questioned by two others. *United States v. Santana*, 6 F.3d 1, 4 (1st Cir.1993); *United States v. Jones*, 13 F.3d 100, 104 (4th

doubt that it has much, we conceive of no basis for allowing this defense, or some variant of it, to reduce a defendant's sentence. The life sentences Walls and Jackson received were mandated by statute. A court would be justified in giving them some other sentence if and only if the Constitution required this. The only constitutional provision Walls and Jackson mention is the Due Process Clause. The outrageous-conduct defense indeed assumes that no other, more specific constitutional right of the defendant has been violated. Yet if the government's actions were not so outrageous that "judicial processes to obtain a conviction" were barred, *Russell,* 411 U.S. at 431–32, 93 S.Ct. at 1642–43—if, in other words, there was no violation of the Due Process Clause—it follows that those actions cannot serve as a basis for a court's disregarding the sentencing provisions. Without "coercion, violence or brutality to the person," we ruled in *United States v. Kelly,* 707 F.2d 1460, 1476 (D.C.Cir.), *cert. denied,* 464 U.S. 908, 104 S.Ct. 264, 78 L.Ed.2d 247 (1983), there could be no due process violation. Nothing of the sort occurred here. The agents' insistence that Walls and Jackson sell them crack cocaine rather than the powdered variety in view of the higher sentences for crack offenses would therefore not entitle Walls or Jackson to a reversal of their convictions. Nor does that conduct provide any constitutional basis to reduce the sentences these defendants received for complying with the agents' wishes.

## C

■ The final question, raised by the government in its cross-appeals, is whether the minimum sentences 21 U.S.C. § 841(b) mandated for Campbell and Blakney constituted cruel and unusual punishment forbidden by the Eighth Amendment.

The jury convicted Campbell and Blakney of one count of conspiracy to distribute 50 grams or more of cocaine base (21 U.S.C. § 846) and one count of distribution of that amount of cocaine base (21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii)). Campbell had two prior felony drug convictions, but only one conviction was final at the time of sentencing. Section 841(b) therefore required the district court to sentence Campbell to a minimum term of 20 years' imprisonment. Blakney had five prior convictions, none however qualifying her for anything other than the mandatory minimum of 10 years' imprisonment under § 841(b) for first-time drug offenders convicted of distributing or conspiring to distribute more than 50 grams of cocaine base. 841 F.Supp. at 26. Holding § 841(b) cruel and unusual as applied to these defendants, the district court— using the Sentencing Guidelines for distribution of cocaine powder—sentenced Campbell to two concurrent sentences of thirty-three months' imprisonment, plus a term of supervised release, and sentenced Blakney to two concurrent sentences of thirty-months' imprisonment, plus a term of supervised release. (Blakney was also convicted of using a communication facility in a drug transaction (21 U.S.C. § 843(b)) for which she was sentenced to a third concurrent thirty-month term.) 841 F.Supp. at 32.

The district court's Eighth Amendment analysis is untenable. The court thought *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), an equal protection case, meant that an "as applied" constitutional challenge "focuses on some sort of prosecutorial misconduct." 841 F.Supp. at 31. And so, "emanations" of racism in § 841(b)'s origins, "racist implications" in its revision, plus the "combined actions of Congress, police and prosecutors, and the courts" should be—the district court said—taken "into account." *Id.* at 31–32. Whether *Castaneda* has any bearing on this case is not worth considering. No sort of government "misconduct" brought about the mandatory penalties on Blakney and Campbell. Campbell and Blakney wound up in this fix because they willingly manufactured crack cocaine for Walls and Jackson. The DEA

---

Cir.1993). In *United States v. Kelly,* 707 F.2d 1460, 1475–76 (D.C.Cir.), *cert. denied,* 464 U.S. 908, 104 S.Ct. 264, 78 L.Ed.2d 247 (1983), we said that government misconduct must rise to the level of "coercion, violence or brutality to the

person" before we will find a due process violation; mere "obnoxious behavior or even flagrant misconduct on the part of the police" will not suffice. *Id.* at 1476 (internal quotations omitted).

agents did nothing whatever improper with respect to them, nor did the prosecutor. As to Congress, its enactment of higher penalties for crack offenses did not result from any discriminatory purpose. We so held in *United States v. Thompson,* 27 F.3d 671, 678 & n. 3 (D.C.Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 650, 130 L.Ed.2d 554 (1994), and *United States v. Johnson,* 40 F.3d 436, 440–41 (D.C.Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1412, 131 L.Ed.2d 297 (1995). The district court's rationale is not, in any event, the stuff of an "as applied" analysis. If Congress had engaged in "misconduct" in meting out higher sentences for crack, it must have done so for all defendants, not just the two who appeared in this case. Yet a facial attack on these mandatory minimum sentences is foreclosed by *United States v. Cyrus,* 890 F.2d 1245 (D.C.Cir.1989), holding that a ten-year sentence for possessing more than fifty grams of crack cocaine did not violate the Eighth Amendment, even though the defendant would have faced only a two-to three-year term had he been convicted of possessing a similar amount of powder cocaine. *Id.* at 1248; *see also United States v. Spencer,* 25 F.3d 1105, 1111 (D.C.Cir.1994); *McLean,* 951 F.2d at 1303.

The district court also said that in light of *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), imposing mandatory minimum sentences on these defendants, both of whom purported to be drug addicts, would be "cruel." *Robinson* held that the Eighth Amendment forbids punishing a drug addict merely for the *status* of being an addict. *Id.* at 667, 82 S.Ct. at 1420. The Supreme Court never suggested that it would therefore be unconstitutional to punish an addict for committing other crimes, even the crime of possessing drugs to feed his habit. We explained this in *Castle v. United States,* 347 F.2d 492, 495 (D.C.Cir.1964), *cert. denied,* 381 U.S. 929, 85 S.Ct. 1568, 14 L.Ed.2d 687, *and cert. denied,* 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726 (1965). Campbell and Blakney obviously cannot take advantage of *Robinson.* Even if they were drug addicts, they were subject to § 841(b) for an entirely separate reason—they prepared large quantities of crack cocaine for sale.

There is another problem with the district court's treatment of *Robinson.* Suppose the sole reason Blakney and Campbell participated in these deals was to obtain money or drugs to satisfy their habits. If this rendered punishing them pursuant to § 841(b) unconstitutional, it would follow that punishment of any sort should be barred. And yet the district court devised its own sentencing scheme, giving each of them 30 months' imprisonment. The court's actions may be explained on the basis that it considered the mandatory minimum sentences too harsh for these particular defendants. That also may explain the court's otherwise irrelevant observation that Campbell and Blakney did not get paid much in the way of money or drugs for their criminal activities. 841 F.Supp. at 32. But harsh or not, the court was bound by the statute. In the only portion of the *Harmelin* opinion joined by a majority, the Court ruled that uniform sentencing is not unconstitutional. The Eighth Amendment, in other words, does not command individualized sentencing and it does not require consideration of mitigating factors in non-capital cases. 501 U.S. at 994–96, 111 S.Ct. at 2701–02. The district court was therefore wrong in concluding that the penalties set forth in § 841(b) would be "arbitrary and capricious" for these particular defendants in view of the particular circumstances of their offenses. 841 F.Supp. at 32.

As applied to Campbell and Blakney, the mandatory minimum sentences set forth in § 841(b) are not unconstitutional and the district court erred in not imposing those sentences.

\* \* \*

The convictions of Walls, Jackson, Campbell and Blakney are affirmed, as are the sentences imposed on Walls and Jackson. The case is remanded for resentencing of Campbell and Blakney in accordance with this opinion.

*So ordered.*