Robert BREEST, Petitioner, Appellant,

v.

Raymond HELGEMOE, etc.,
Respondent, Appellee.

No. 77-1208.

United States Court of Appeals,
First Circuit.

June 8, 1978.

Jeanne Baker, Cambridge, Mass., by appointment of the court, with whom Rosenberg, Baker & Fine, Cambridge, Mass., was on brief, for petitioner, appellant.

Peter W. Heed, Asst. Atty. Gen., Concord, N. H., with whom David H. Souter, Atty. Gen., and John C. Boeckeler, Asst. Atty. Gen., Concord, N. H., were on brief, for respondent, appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Petitioner-appellant, Robert Breest, [hereinafter petitioner], a convicted New Hampshire state prisoner, appeals from an opinion and order of the United States District Court for the District of New Hampshire denying, in substantial part, relief sought on a petition for a writ of habeas corpus. Accused of killing a young woman on February 28, 1971, petitioner was tried by jury and convicted of first degree murder. On March 22, 1973, the day of the jury's verdict, he was sentenced to life imprisonment and immediately commenced to serve his sentence. On April 5, 1973, petitioner was returned before the trial court and his crime was certified as "psycho-sexual in nature" pursuant to the requirements of NH RSA 607:41–b to d (Supp.1972).[1] The effect of that certification was to fix the minimum sentence which petitioner would have to serve before becoming eligible for parole at forty years minus good time credits. During trial and at both sentencing hearings, petitioner was represented by counsel.

Petitioner appealed to the New Hampshire Supreme Court, raising numerous challenges to his conviction and sentence. Of these, three constitute the claims presented here. First, petitioner claims that the application to him of the psycho-sexual murder provisions impermissibly placed him twice in jeopardy. Second, application of those provisions is assailed as violating the prohibition against ex post facto laws. Third, it is claimed that certain evidence used against petitioner at his trial was obtained unlawfully because the warrant authorizing the search was based upon an affidavit allegedly containing intentional misrepresentations of fact. Finding these challenges to be without merit, the New Hampshire Supreme Court affirmed the conviction and sentence. *State v. Breest,* 116 N.H. 734, 367 A.2d 1320 (1976).

Petitioner then sought federal habeas corpus relief, raising the same issues previously decided in his state appeal. The district court ruled against petitioner on all of his claims except one. The court held that

---

1. § 607:41–b

"A prisoner serving a sentence of life imprisonment who has been convicted of murder in the first degree which was psycho-sexual in nature shall not be eligible for parole until he shall have served forty years . . . and until the board shall recommend to the superior court that said prisoner should be released on parole. The superior court shall have a hearing on the recommendation of the board at which all interested parties, including the attorney general, may appear and present evidence. If it shall appear to the superior court after said hearing that there is a reasonable probability that the prisoner will remain at liberty without violating the law and will conduct himself as a good citizen, the court may order him released on parole with such conditions as it may deem just."

§ 607:41–c

"Whenever any person is convicted of murder in the first degree the presiding justice shall certify, at the time of sentencing, whether or not such murder was psycho-sexual in nature."

§ 607:41–d

". . . the phrase 'murder which is psycho-sexual in nature' means murder in which there is evidence that the offender has committed sexual assault or abuse or attempted sexual assault or abuse of the victim before or after death."

due process requires the state to afford petitioner an evidentiary hearing on the issue of whether the murder was in fact psycho-sexual in nature, before subjecting him to the harsher parole provisions of the psycho-sexual murder statute. The state does not challenge that ruling on this appeal.[2] The district court held, however, that the application of the psycho-sexual murder statute violated neither the double jeopardy nor the ex post facto clauses of the Constitution. As to the Fourth Amendment claim, the court found that the "State has provided [petitioner] an opportunity for full and fair litigation", and therefore federal habeas corpus relief on that issue was precluded by *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). We conclude that petitioner's rights have not been violated and therefore affirm.

### Challenges to Resentencing

Petitioner challenges his sentence under the proscriptions against both the double jeopardy and ex post facto laws. A brief chronology sets the stage for consideration of these claims. On February 28, 1971, the date of the crime, the penalty for first degree murder in New Hampshire was life imprisonment without the possibility of parole. NH RSA 607:43 (1955); NH RSA 585:4 (1955).[3] On July 1, 1971, NH RSA 607:41–a became effective, providing that persons serving life sentences would be eligible for parole after serving eighteen years.[4] On April 4, 1972, petitioner was indicted for first degree murder. Then, on May 14, 1972, new provisions dealing with psycho-sexual murder took effect, altering parole eligibility in certain first degree murder cases.[5] NH RSA 607:41–c (Supp. 1972) provided that

> "Whenever any person is convicted of murder in the first degree, the presiding justice shall certify, at the time of sentencing, whether or not such murder was psycho-sexual in nature."

If the crime was so certified, the person convicted could not become parole eligible until forty years had been served.

On March 22, 1973, while this provision was in effect,[6] petitioner was convicted of first degree murder, sentenced to imprisonment "for life", and began to serve his sentence. At this sentencing, the court neglected to make the required certification, and indeed failed to make any reference to

---

**2.** The required hearing has not yet occurred since the New Hampshire Supreme Court is holding the case in abeyance pending the outcome of this appeal.

**3.** The relevant statutes provided:

§ 607:43. "Any prisoner whose conduct while in prison has been meritorious and whose minimum sentence is two years or more may be paroled by the state board of parole when he has served two-thirds of his minimum sentence, provided it shall appear to said board to be a reasonable probability that he will remain at liberty without violating the law and will conduct himself as a good citizen."

§ 585:4. "The punishment of murder in the first degree shall be death or imprisonment for life, as the jury may determine, except as provided in section 5; and the punishment for murder in the second degree shall be imprisonment for life, or for such term as the court may order. If the jury shall find the respondent guilty of murder in the first degree, the punishment shall be life imprisonment unless the jury shall add to their verdict the words, with capital punishment."

**4.** As originally enacted, NH RSA 607:41–a provided:

"A prisoner serving a sentence of life imprisonment may be given a life permit at any time after having served eighteen years which shall be deemed the minimum term of his sentence for the purposes of this section, minus any credits earned under the provisions of RSA 607:51–a, b and c, provided it shall appear to said board to be a reasonable probability that he will remain at liberty without violating the law and will conduct himself as a good citizen."

**5.** *See* note 1, *supra.* At the same time, NH RSA 607:41–a was amended to except first degree murder, "psycho-sexual in nature" from the eighteen year parole eligibility provision.

**6.** The psycho-sexual murder provisions were repealed prospectively as of April 15, 1974. NH RSA 651:45–a, b (1974). Also abolished, effective on that date, was the possibility of parole for anyone convicted of first degree murder. *Id.*

NH RSA 607:41–c.[7] Five days later, on March 27, 1973, the state filed a motion for resentencing pursuant to the psycho-sexual murder provisions. Petitioner was returned to the court on April 5, 1973 and, over his objection, the court certified the murder as psycho-sexual. As noted, this had the effect of increasing petitioner's minimum term from eighteen to forty years.[8]

■ Petitioner's first claim is that the imposition of a more onerous minimum term at the resentencing hearing on April 5, 1973, violated his right not to be twice placed in jeopardy. As a general rule, an increase in sentence after a defendant has begun to serve his punishment contravenes the prohibition against double jeopardy. *See, e. g., Ex Parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874); *United States v. Bynoe,* 562 F.2d 126, 128 (1st Cir. 1977). In rejecting petitioner's double jeopardy claim, however, both the district court and the New Hampshire Supreme Court invoked a well recognized exception to that rule. In the leading case of *Bozza v. United States,* 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947), the trial court, when sentencing a defendant convicted under a statute requiring *both* a fine and imprisonment, imposed a prison term only. Five hours after sentence was announced the court realized its mistake, called back the defendant and imposed a fine in addition to the prison term. The Court rejected the contention that the subsequent imposition of the fine to conform the sentence to the statutory requirements constituted double jeopardy. *Bozza* thus stands for the proposition that "a trial court not only *can* alter a statutorily-invalid sentence in a way which might increase its severity, but *must* do so when the statute so provides." *Thompson v. United States,* 495 F.2d 1304, 1306 (1st Cir. 1974) (emphasis in original); *United States*

*v. Bishop,* 487 F.2d 631, 633 (1st Cir. 1973). *See Pollard v. United States,* 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). Even after the defendant has commenced to serve his sentence, that power and that obligation continue. *United States v. Davis,* 183 U.S.App.D.C. 121, 561 F.2d 1014, cert. denied, 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977); *United States v. Stevens,* 548 F.2d 1360 (9th Cir.), *cert. denied,* 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 369 (1977); *Llerena v. United States,* 508 F.2d 78 (5th Cir. 1975); *see United States v. Becker,* 536 F.2d 471, 472 (1st Cir. 1976); Fed.R.Crim.P. 35.

■ The sentence imposed on March 22, 1973 of life imprisonment, without any finding as to whether or not the crime was "psycho-sexual in nature", and if it was, without a certification to that effect setting the minimum term at forty years, was a "statutorily invalid sentence". *See State v. Breest,* 116 N.H. 734, 367 A.2d 1320, 1335 (1976). As such, the sentence would fall within the *Bozza* exception and the trial court would not violate petitioner's rights under the double jeopardy clause by correcting it.

Petitioner asserts, however, that *Bozza* is not applicable since a life sentence without a psycho-sexual certification was a theoretically permissible penalty for first degree murder. This being so, he asserts that the general rule against enhancement of a valid sentence should still apply to bar the resentencing here. *See, e. g., United States v. Bynoe, supra; United States v. Turner,* 518 F.2d 14 (7th Cir. 1975); *United States v. Bowens,* 514 F.2d 440 (9th Cir. 1975).

■ While it may be true that petitioner could have been lawfully imprisoned under a life sentence imposed without reference

---

**7.** That oversight was understandable. In March of 1973, those provisions were of recent enactment and the crime for which petitioner was convicted appears to have been the first and only one to which they were ever applied.

**8.** Under NH RSA 585:4 (1955), which governed the penalty for first degree murder on the date of petitioner's crime, he would have received

life without parole. NH RSA 607:41–a established an eighteen year minimum term effective July 1, 1971, but did not explicitly repeal RSA 585:4. Thus, as petitioner seems to concede, he apparently could have been sentenced to life without parole. The state, however, gave him the benefit of the doubt and never argued that the older, more harsh penalty should apply.

to the psycho-sexual murder statute, and thus implicitly have been subject to the more lenient eighteen year parole term, we believe it clear that the court had a duty to determine whether the crime was psycho-sexual in nature and if it was, to so certify. The court's failure to do so on March 22, 1973 left the sentence incomplete and, in petitioner's case, potentially more lenient than the statute permitted.[9] In that circumstance, the sentence—while lawful in the sense that petitioner was and could have remained lawfully incarcerated thereunder—was still legally invalid in the sense that it was subject to correction. *See United States v. Kenyon,* 519 F.2d 1229, 1321–32 (9th Cir.), *cert. denied,* 423 U.S. 935, 96 S.Ct. 293, 46 L.Ed.2d 267 (1975); *cf. Cook v. United States,* 171 F.2d 567, 569 (1st Cir. 1948), *cert. denied,* 336 U.S. 926, 69 S.Ct. 647, 93 L.Ed. 1088 (1949).

An example of the application of this principle is found in our recent decision in *Thompson v. United States, supra.* There petitioner had been convicted of federal narcotics offenses in violation of 21 U.S.C. §§ 841(a)(1), 846 (1970), was sentenced to, and began serving, a prison term. Some time thereafter, the Bureau of Prisons notified the court that in sentencing petitioner, it had failed to include a "special parole term", as required by 21 U.S.C. § 841(b)(1)(A) (1970). In response, the court amended petitioner's sentence to include a three year special parole term. On appeal we upheld the amended sentence against a double jeopardy challenge on the ground that the trial court not only could correct the sentence to comply with the statutory requirements without violating petitioner's rights, but indeed had a duty to do so. 495 F.2d at 1306. Our position in *Thompson* has been embraced by several other circuits. *United States v. Davis,* 183 U.S.App.D.C. 121, 125, 561 F.2d 1014, 1018,

cert. denied, 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977); *Bell v. United States,* 521 F.2d 713, 716 (4th Cir. 1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976); *United States v. Kenyon, supra; United States v. Richardson,* 498 F.2d 9, 10 (8th Cir.), *cert. denied,* 419 U.S. 1020, 95 S.Ct. 494, 42 L.Ed.2d 294 (1974); *Garcia v. United States,* 492 F.2d 395, 397–98 (10th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 178, 42 L.Ed.2d 142 (1974); *Caille v. United States,* 487 F.2d 614, 616 (5th Cir. 1973); *United States v. Thomas,* 474 F.2d 1336 (2d Cir. 1973), *aff'g* 356 F.Supp. 173, 174 (E.D. N.Y.1972). In applying the law of these cases to the present case, Judge Goodwin's comments in *United States v. Kenyon, supra,* are particularly instructive:

"Sentences which are defective because they fail to impose a minimum required penalty should be viewed as voidable by the court, either on its own motion or at the request of the government. But such sentences are fully effective unless and until they are voided by the court.

\* \* \* \* \* \*

"When a judge has omitted entirely a category of punishment mandated by statute, he has not exercised the discretion with respect to that punishment which the statute contemplates. We do not read the double jeopardy clause to preclude the exercise of such discretion on resentencing." 519 F.2d at 1232–33 (footnote omitted).[10]

■ We do not consider it to be of significance to our decision whether the trial court's error is characterized as the imposition of an "illegal sentence", or the imposition of a legal sentence in an "illegal manner" due to the court's failure to make the required certification. In either case, the double jeopardy clause does not preclude the court from bringing the sentence and

---

**9.** Of course, whether or not petitioner's crime in fact warrants a forty, as opposed to an eighteen year minimum, depends upon the findings of the sentencing court after petitioner has been afforded the hearing required by the district court.

**10.** In *Kenyon,* the court permitted upon resentencing the imposition of a term greater than the statutory minimum. Here, we need not go that far since the sentencing judge had no option under New Hampshire law other than to impose the forty year minimum if the crime were found to be psycho-sexual in nature.

the manner of its imposition into compli-ance with statutory requirements. *See United States v. Stevens, supra,* 548 F.2d at 1362 & n.8.[11]  Fed.R.Crim.P. 35.

Because the trial court had a duty under the statute, its failure to fulfill that duty left the original sentence legally incomplete.[12]  We stress that this is not a case where the sentencing court attempts to increase a defendant's sentence on the basis of mistakes of fact, *see, e. g., United States v. Bynoe, supra,* or simply a change of heart.  Nor is this a case where the court in correcting the sentence exercised any discretion which could have been used vindictively or for improper purposes. *See North Carolina v. Pearce,* 395 U.S. 711, 723–26, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Blankenship v. Parratt,* 554 F.2d 850, 852 (8th Cir. 1977); *Jones v. United States,* 538 F.2d 1346, 1348 (8th Cir. 1976).  The New Hampshire statute involved here required the court to make a finding of fact; if that finding was in the affirmative, a particular penalty inexorably followed.  Thus, the danger of unfairness to, or harassment of petitioner through correction of his sentence was minimal.  Conversely, the state's interest in the imposition of the legislatively established punishment for this serious crime is strong.

■ Before leaving this question, we note our concern that the power of a sentencing court to correct even a statutorily invalid sentence must be subject to some temporal limit.  When a prisoner first commences to serve his sentence, especially if it involves a long prison term as here, the prospect of release on parole or otherwise may seem but a dimly perceived, largely unreal hope.  As the months and years pass, however, the date of that prospect must assume a real and psychologically critical importance.  The prisoner may be aided in enduring his confinement and coping with the prison regime by the knowledge that with good behavior release on parole or release outright will be achieved on a date certain.  After a substantial period of time, therefore, it might be fundamentally unfair, and thus violative of due process for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set.  We need not decide, however, how long or under what circumstances the state or a sentencing court constitutionally can wait to enhance an invalid sentence.  The short period of time involved here clearly was permissible.

Petitioner next assails his sentence as contrary to the constitutional proscription against ex post facto laws.  Article I, section 10.  He concedes that on February 28, 1971, the date of the killing, the penalty for first degree murder in New Hampshire was life imprisonment without possibility of parole—a penalty substantially harsher than

---

**11.** In *Stevens,* the trial court inadvertently failed to impose as harsh a sentence as that previously agreed to by defendant in proceedings pursuant to Fed.R.Crim.P. 11.  A week later, the court corrected the error.  Noting that under Rule 11, the sentencing court is required to impose the agreed to sentence, the Ninth Circuit found no double jeopardy violation.  The trial court had imposed sentence in an "illegal manner"; thus it was subject to correction under Rule 35.  "Correction of a sentence imposed in an illegal manner does not violate double jeopardy even if the correction increases the punishment, and the fact that [defendant] had commenced serving the defective sentence is irrelevant."  548 F.2d at 1362–63 (footnote omitted).

**12.**  The authorities relied upon by petitioner are thus distinguishable since none involve a court simply correcting a sentence to comply with a statutory mandate without imposing any additional penalty other than that required by the statute.  *See In re Bradley,* 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943); *United States v. Benz,* 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931); *United States v. Bynoe, supra; United States v. Durbin,* 542 F.2d 486 (8th Cir. 1976); *United States v. Turner,* 518 F.2d 14 (7th Cir. 1975); *United States v. Munoz-Dela Rosa,* 495 F.2d 253 (9th Cir. 1974); *Chandler v. United States,* 468 F.2d 834 (5th Cir. 1972); *United States v. Welty,* 426 F.2d 615 (3d Cir. 1970); *Borum v. United States,* 133 U.S.App.D.C. 147, 409 F.2d 433 (1967), *cert. denied,* 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969); *United States v. Sacco,* 367 F.2d 368 (2d Cir. 1966); *United States v. Adams,* 362 F.2d 210 (6th Cir. 1966).

he actually received.[13] Further, he concedes that on March 22, 1973, the day of his conviction and original sentencing, the law provided for a penalty of life imprisonment with parole eligibility after forty years for a person convicted of first degree murder found to be psycho-sexual in nature. Petitioner, however, asserts constitutional error based upon the facts that (1) the psycho-sexual murder provisions were enacted subsequent to the crime; and (2) on the day he was indicted, the statute establishing eighteen year parole eligibility for life sentences had taken effect but the qualification to that provision in the case of psycho-sexual murders, though enacted, had not yet become effective.

Both the New Hampshire Supreme Court and the district court rejected this claim on the ground that the law under which petitioner was sentenced was less onerous than the law in effect at the time of the crime and thus not a violation of the ex post facto clause.

■ The constitutional ban on ex post facto laws reaches (1) every law which makes criminal an act done before its enactment which was legal when performed; (2) every law that aggravates a crime or makes it greater than it was when committed; (3) every law that changes the punishment and inflicts a greater punishment than the law affixed to the crime when committed; and (4) every law that alters the legal rules of evidence and receives less, or different evidence than the law required at the time of the commission of the offense, in order to convict the offender; or (5) otherwise, any change in a law in relation to the offense or its consequences, that alters the situation of a party to his disadvantage. *Calder v. Bull,* 3 U.S. (3 Dall.) 385, 390, 1 L.Ed. 648 (1798); *Malloy v. South Carolina,* 237 U.S. 180, 183–85, 35 S.Ct. 507, 59 L.Ed. 905 (1915); *Lindsey v. Washington,* 301 U.S. 397, 401, 57 S.Ct. 797, 81 L.Ed. 1182 (1936).

■ Subsequent elaborations of the ex post facto clause have made it clear that parole eligibility constitutes part of punishment and thus that a retroactively applied change in eligibility to the disadvantage of a prisoner may at least in some circumstances be unconstitutional. *See Shepard v. Taylor,* 556 F.2d 648 (2d Cir. 1977); *Greenfield v. Scafati,* 277 F.Supp. 644 (D.Mass. 1967), *aff'd mem.,* 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968). From the earliest judicial construction to the present, however, it has also been clear that application of a law, enacted after the crime, which changes the punishment, is not in and of itself unconstitutional. Only those which inflict greater or additional punishment are banned. As Mr. Justice Chase noted,

"I do not consider any law *ex post facto,* within the prohibition, that mollifies the rigor of the criminal law; but only those that create, or aggravate, the crime; or increase the punishment, or change the rules of evidence, for the purpose of conviction." *Calder v. Bull, supra,* 3 U.S. (3 Dall) at 390.

*See Dobbert v. Florida,* 432 U.S. 282, 292–94, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *United States v. Palladino,* 490 F.2d 499, 501 n.7 (1st Cir. 1974); *Commonwealth v. Vaughn,* 329 Mass. 333, 339, 108 N.E.2d 559, 563 (1952).

■ Against these principles, petitioner's argument must fail. We shall assume that if, on the date of the killing, the penalty for first degree murder had been life with parole eligibility in eighteen years, application of a provision increasing the minimum term to forty years would have been unconstitutional. *See, e. g., Lindsey v. Washington, supra.* However, that was not what happened here. When petitioner committed the act for which he was convicted, the penalty for that crime was life without parole. Subsequently, the law was changed to provide that persons serving life sentences could be parole eligible in eighteen years, except those convicted of a first degree murder that was psycho-sexual in nature, whose minimum term was set at forty years. These statutory changes did not make criminal an act innocent when com-

13. *See* note 8, *supra.*

mitted, nor did they aggravate the crime. While the punishment affixed to the crime was altered, the change was ameliorative, regardless of whether or not the psycho-sexual provisions were applied.[14] And while there was a modification of the evidence relevant to sentencing, neither the rules of evidence nor the elements required for a first degree murder conviction were changed. *See Todd v. Stynchcombe,* 486 F.2d 1030 (5th Cir. 1973); *Ward v. State of California,* 269 F.2d 906, 907–08 (9th Cir. 1959); *People v. Ward,* 50 Cal. 702, 328 P.2d 777 (1958), *cert. denied,* 359 U.S. 945, 79 S.Ct. 730, 3 L.Ed.2d 678 (1958); *People v. Warden,* 43 Misc.2d 109, 250 N.Y.S.2d 15, 19–23, *aff'd mem.,* 15 N.Y.2d 663, 255 N.Y. S.2d 876, 204 N.E.2d 206 (1964), *cert. denied,* 380 U.S. 937, 85 S.Ct. 948, 13 L.Ed.2d 824 (1965). In sum, the New Hampshire law as applied to petitioner was neither "more onerous than the prior law" nor disadvantageous in any respect. No violation of the bar against ex post facto laws occurred. *Dobbert v. Florida, supra; Commonwealth v. Vaughn, supra.*

Acknowledging these shortcomings in his position, petitioner nonetheless asks us to test his claim not by comparing the law in effect on the date of the murder to that under which he was sentenced, but rather that in effect on the day he was indicted. On that date, April 4, 1972, the statute providing for the eighteen year parole eligibility had taken effect. The provision establishing a forty year minimum for psycho-sexual murders, while enacted on March 15, 1972, did not, however, become effective until May 14, 1972.

██ Petitioner had no inherent right to be sentenced under the eighteen year minimum sentence provisions, simply because they were in effect on the date of his indictment. Petitioner suggests that the state should be estopped from applying any-

thing but the eighteen year provisions, because it sought to have him resentenced upon discovering that the original sentence failed to include the required certification. We see no reason to construe the state's actions here as constituting a concession that petitioner would be sentenced under the eighteen year provision without reference to the psycho-sexual murder provisions. At most, the state's conduct at the original sentencing manifested ignorance of all the relevant statutory requirements. Moreover, even assuming such a concession by the state, petitioner has established neither reliance nor prejudice to justify an estoppel.

██ No policy underlying the interdiction of ex post facto laws requires a different result. First, petitioner clearly had adequate notice that the deliberate and premeditated killing of another constituted first degree murder in New Hampshire on February 28, 1971, and that the state considered the crime serious enough to warrant life imprisonment. That the state later decided to treat first degree murderers more leniently, but some even more leniently than others, does not render petitioner's notice inadequate.[15] *Cf. Commonwealth v. Vaughn, supra.* Second, there is no basis on this record for concern about politically motivated retroactive retribution. The psycho-sexual murder provisions were enacted before petitioner's indictment. While petitioner apparently was the only person sentenced thereunder, he also was the only person convicted of first degree murder in New Hampshire while the statute was in effect. When it was repealed, the mandatory life sentence for first degree murder was reinstated. Thus, petitioner, rather than being singled out for harsher treatment, appears to have been the single beneficiary of the state's experiment with greater leniency.

14. *See Commonwealth v. Vaughn, supra,* 329 Mass. at 339, 108 N.E.2d at 563:

"Now that [defendant] has been the beneficiary of a statute permitting [less harsh punishment], he cannot complain that the benefits were not even greater."

15. In this regard, we also note that petitioner has had ample notice that whether or not the crime was psycho-sexual in nature would have an impact upon sentence and that he will have a full and fair opportunity to contest the applicability of the psycho-sexual murder provisions at the hearing ordered by the district court.

104

*The Fourth Amendment Claim*

Petitioner's final ground for relief may be disposed of quickly. He maintains that the trial court erred in failing to exclude certain evidence obtained on the basis of an allegedly defective affidavit in that facts tending to negate probable cause were deliberately omitted by law enforcement officers. We do not reach the merits of this claim. We agree with the district court that the state courts afforded petitioner "an opportunity for full and fair litigation" of his Fourth Amendment claim. Therefore, relief is not available under 28 U.S.C. § 2254. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Dupont v. Hall,* 555 F.2d 15, 17 (1st Cir. 1977); *United States ex rel. Petillo v. State of New Jersey,* 562 F.2d 903, 906 (3d Cir. 1977); *Cole v. Estelle,* 548 F.2d 1164 (5th Cir. 1977); *Holmberg v. Parratt,* 548 F.2d 745 (8th Cir.), *cert. denied,* 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977).

*Affirmed.*