STATE

v.

**Frederick E. DeWITT.**

No. 88–181–C.A.

Supreme Court of Rhode Island.

April 14, 1989.

James E. O'Neil, Atty. Gen., Annie Goldberg, Asst. Atty. Gen., for plaintiff.

Barbara Hurst, and Paula Rosin, Asst. Public Defenders, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal by the defendant from an order of the Superior Court both granting the state's motion to correct sentence and denying the defendant's motion to reduce sentence. We affirm the order of the trial justice granting

the state's motion to correct sentence and vacate the trial justice's order denying the defendant's motion to reduce sentence. The facts of the case insofar as pertinent to this appeal are as follows.

On July 7, 1977, a Providence County grand jury returned a six count indictment against defendant, Frederick E. DeWitt. On March 17, 1978, defendant was convicted by a jury in the Superior Court on three counts including robbery, arson, and assault with the intent to commit murder. On May 8, 1978, the trial justice sentenced defendant to life imprisonment for the robbery conviction, twenty years for the conviction of assault with intent to murder, and ten years for the conviction of arson. All sentences were to run concurrently. The defendant filed a timely appeal, which was denied by this court. *State v. DeWitt,* 423 A.2d 828 (R.I.1980). The defendant began serving his sentence in 1978.

On January 17, 1981, defendant filed a motion for reduction of sentence pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure, which was subsequently granted by the trial justice on July 1, 1981. The sentence for robbery was modified from life imprisonment by suspending that portion of the sentence in excess of fifteen years. The trial justice further provided for twenty years probation upon defendant's release. The sentence for assault with intent to murder was modified from twenty years imprisonment by suspending that portion of the sentence in excess of fifteen years, with five years probation upon defendant's release. The arson count was not modified.

In January of 1987, defendant was paroled from the Adult Correctional Institutions. However, later that year defendant was arrested for alleged parole violations, including assault with intent to murder, robbery, and entry with intent to commit larceny. At this juncture the state moved to correct the sentence as previously modified and to reimpose the original life sentence. The state's motion was based on this court's decision in *State v. O'Rourke,* 463 A.2d 1328 (R.I.1983), which declared that a trial court lacks authority to suspend

a sentence previously imposed in whole or in part, once a defendant has begun to serve the same. On September 21, 1987, the trial justice vacated the reduction and reimposed the original sentence of life imprisonment, relying on *O'Rourke.* On January 19, 1988, defendant filed a second motion to reduce the life sentence under Rule 35, which motion was denied for lack of timeliness on February 4, 1988.

This appeal presents two issues: (1) Did the trial justice err in reimposing defendant's original sentence in 1987? (2) Did the trial justice err in refusing to hear, for lack of timeliness, defendant's subsequent motion to reduce?

I

The defendant's challenge to the trial justice's decision to reimpose his original sentence is premised on two grounds. First, defendant argues that he had a legitimate interest and expectation in the finality of the reduced sentence because the state failed to attempt to correct the sentence reduction until six years after the modification (four years after our decision in *O'Rourke* was filed). The defendant argues that in reimposing his life sentence, the trial justice was fundamentally unfair, in violation of the ex post facto clause of the United States Constitution and his due process rights as enunciated in *Breest v. Helgemoe,* 579 F.2d 95 (1st Cir.1978). Second, defendant argues that because the state delayed in seeking to reimpose his life sentence, it is now estopped because he relied on the reduction in sentence and his parole status.

A. Due Process

In vacating defendant's suspension of sentence, the trial justice relied upon this court's decision in *State v. O'Rourke, supra.* There, we analyzed the relationship among G.L.1956 (1981 Reenactment) § 12–19–8, § 12–19–10, and Rule 35. Under § 12–19–8, "[e]xcept where the suspension of sentence shall otherwise be prohibited by law," the Superior Court may "impose a sentence and suspend the execution thereof, in whole or in part." Section 12–19–10 states that "[i]mprisonment pursuant

to a sentence, once commenced, shall not be subject to suspension." Rule 35 in pertinent part states:

"The court may correct an illegal sentence at any time. The court may correct a sentence imposed in an illegal manner and it may reduce any sentence within one hundred twenty (120) days after sentence is imposed, or within one hundred twenty (120) days after receipt by the court of a mandate of the Supreme Court of Rhode Island issued upon affirmance of the judgment or dismissal of the appeal* * * ."

In *O'Rourke* we decided that under the plain language of § 12–19–10 the trial justice lacked the authority to suspend any part of a defendant's sentence pursuant to a motion to reduce under Rule 35 once he had begun serving the same, and that such a purported suspension was null and void. We concluded that Rule 35 has no effect upon the meaning or application of § 12–19–10. 463 A.2d at 1331. Once a defendant begins to serve a sentence, "the option of suspending some part of the sentence [is] no longer available." *Id.* at 1332. Here, as in *O'Rourke*, suspension by the trial justice took place after defendant commenced serving his sentence. Our decision in *O'Rourke* does not lose its force or effect because the state allowed four years to lapse (subsequent to the date of our opinion in *O'Rourke*) before seeking to correct defendant's sentence.

Here, defendant's sentence was suspended after he began serving the sentence, a procedure that is clearly forbidden by § 12–19–10. Accordingly, the suspension constituted an invalid order, which could not give rise to any legitimate expectation under the due process clause on defendant's part regarding the completion of his suspended sentence.

Additionally, defendant's reliance on *Breest, supra,* is without merit. The First Circuit Court of Appeals in *Breest* suggested in dictum that the power of a sentencing court to correct an illegal sentence

"must be subject to some temporal limit. * * * After a substantial period of time, therefore, it might be fundamentally un-

fair, and thus violative of due process for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set." 579 F.2d at 101.

In *Lerner v. Gill,* 463 A.2d 1352 (R.I. 1983), we considered the First Circuit's decision in *Breest* and held that this language constituted "pure dicta" and was too speculative to justify the defendant's due process claim. *Id.* at 1362. We further pointed out in *Lerner* that many courts "have held that an illegal sentence may be altered or corrected at any time." *Id. United States v. Bynoe,* 562 F.2d 126, 129 (1st Cir.1977); *Burns v. United States,* 552 F.2d 828, 831 (8th Cir.1977); *People v. Favors,* 42 Colo. App. 263, 264, 600 P.2d 78, 79 (1979); *State v. Fry,* 61 Haw. 226, 230, 602 P.2d 13, 16 (1979); *Coles v. State,* 290 Md. 296, 303, 429 A.2d 1029, 1032 (1981); *State v. Burkhart,* 566 S.W.2d 871, 873 (Tenn. 1978); *cf. State v. Delmondo,* 67 Haw. 531, 696 P.2d 344 (1985) (There may be circumstances under which it may violate due process to correct even an illegal sentence.).

It should be noted that Rule 35 of the Superior Court Rules of Criminal Procedure specifically states that "[t]he court may correct an illegal sentence at any time." The terms of this rule, which has the force of law, would certainly militate against the existence of a protectable interest in the vitality of an illegal sentence based solely upon passage of time. G.L. 1956 (1985 Reenactment) § 8–6–2.

The defendant also cites authority from the states of Connecticut, Hawaii, and the United States Court of Appeals for the Fourth Circuit supporting time restrictions placed upon a sentencing court's power to correct an illegal disposition. However, such authority is neither persuasive nor binding upon this court.

### B. Ex Post Facto Clause

■ The defendant argues that the trial justice's application of § 12–19–10 in vacating his suspended sentence constituted an unlawful ex post facto application of law,

citing *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

The ex post facto clause had historically been applied only to acts of the Legislature and not to judicial or administrative interpretation of such legislative acts. *Ross v. Oregon,* 227 U.S. 150, 33 S.Ct. 220, 57 L.Ed. 458 (1913). An exception to this general rule was set forth in *Bouie.* In that case the South Carolina Supreme Court construed a trespass statute so as to expand narrow and precise statutory language in such a fashion as to make the defendants subject to a criminal penalty in circumstances that were not foreseeable by a reading of the statutory language itself. Justice Brennan held for the majority that a criminal statute must give fair warning of the conduct that it proscribes. He went on to state that fair warning can be denied not only by "vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie,* 378 U.S. at 352, 84 S.Ct. at 1702, 12 L.Ed.2d at 899. On the contrary, our opinion in *O'Rourke* simply applied clear and unequivocal language contained in § 12–19–10. Our interpretation was not only foreseeable, but inevitable.

In *Lerner v. Gill* we examined and discussed the ex post facto clause of the United States Constitution, Art. I, § 10, and its various objectives at length. There, we outlined the specific types of laws that are deemed ex post facto according to the United States Supreme Court. We began with the seminal exposition of what constitutes an ex post facto law as enunciated by Mr. Justice Chase in *Calder v. Bull,* 3 U.S. (3 Dall.) 385, 390, 1 L.Ed. 648, 650 (1798):

"1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender."

Section 12–19–10 was enacted by P.L. 1950, ch. 2462, § 1, and compiled as part of the General Laws of 1956. The only change in 1981 was to insert the word "Superior" before the word "Court." The purported suspension of sentence by the trial justice in issue here took place in 1981. In order for there to be a violation of the ex post facto clause, the statutory prohibition of which complaint is made (in this case the suspension of defendant's sentence) must occur subsequent to the commission of the offense or the eligibility for the reduction of sentence upon which defendant had a right to rely. However § 12–19–10 was enacted approximately thirty years prior to the suspension of defendant's sentence and twenty-seven years prior to the commission of the offense for which defendant was originally sentenced.

Additionally, defendant's reliance on *Bouie, supra,* is misplaced. The Supreme Court in *Bouie* held that the fundamental principle of the ex post facto clause was to prohibit the Legislature from retroactively applying criminal statutes to an act occurring prior to their enactment and that the same principle applied to unforeseeable judicial interpretations as well. *Bouie,* 378 U.S. at 354, 84 S.Ct. at 1703, 12 L.Ed.2d at 900. The Supreme Court qualified the application of the ex post facto clause upon the courts to "retroactive judicial expansion of narrow and precise statutory language." *Id.* at 352, 84 S.Ct. at 1702, 12 L.Ed.2d at 899. However, defendant's ex post facto argument is focused upon the incorrect source. The defendant urges that the trial justice's action in vacating his reduced sentence constituted a violation of the ex post facto clause. Here, however, the act of the trial justice is not within the restrictive ambit of the Supreme Court's decision in *Bouie.* Not only did the trial justice not interpret § 12–19–10 in a manner that retroactively expanded its application, he did not consider the statute at all. The trial justice, in vacating the suspended sentence, stated that his 1981 modification

of sentence was null and void because the Superior Court did not have the power to suspend defendant's sentence in light of our decision in *O'Rourke,* where we interpreted § 12–19–10. The effect of this ruling by the trial justice is not one of retroactive interpretation. The trial justice simply followed this court's decision in *O'Rourke.* This court, in its opinion in *O'Rourke,* merely applied the plain and unambiguous language of the statute.

Accordingly, we hold that the trial justice, in vacating defendant's suspended sentence in July of 1981, did not commit a violation of the ex post facto clause of the United States Constitution.

### C. Estoppel

■ The defendant argues that his reliance on the suspended sentence mandates that the state now be estopped from reimposing his life sentence. He also argues that he has lost the parole status he had earned, which was granted to him in 1981 by the Superior Court. Finally, the defendant argues that the unfairness of this action is heightened when considering that he, unlike Lerner, had actually been released on parole and achieved freedom once again, only to have it taken away "due to a misconception which was nobody's fault."

In *Lerner* we held that "[i]n determining whether estoppel is an appropriate device to use against the government, we must not only consider the problems encountered by the petitioner, but we must also be mindful of the public interest involved." 463 A.2d at 1363. *See also United States v. Wharton,* 514 F. 2d 406, 412–13 (9th Cir.1975); *Beacom v. Equal Employment Opportunity Commission,* 500 F.Supp. 428, 435–36 (D. Ariz.1980). The public interest in the imposition of legal sentences is a compelling interest. We have also held that an estoppel will not arise against a governmental agency absent proof of a significant detriment or hardship to the party relying upon state or municipal action. *Lerner v. Gill,* 463 A.2d at 1363; *City of Warwick v. Almacs, Inc.,* 442 A.2d 1265, 1274 (R.I.1982). In the case at bar there is no indication that defendant suffered any detriment or hardship in reliance upon his

suspension of sentence. In fact, the suspension and apparent parole eligibility worked entirely to his advantage until alleged violations of his parole brought him to the attention of the authorities. The mere passage of time between the imposition of an illegal sentence and the effort by the state to seek a correction thereof is insufficient in the circumstances of this case to create an estoppel. *See, e.g., Newport National Bank v. United States,* 556 F.Supp. 94 (D.R.I.1983).

### II

■ The trial justice reimposed the defendant's life sentence on September 21, 1987. Subsequently, on January 19, 1988, the defendant filed a motion to reduce sentence pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure. The trial justice refused to consider the motion on its merits because of its untimeliness. Rule 35 affords the court 120 days after a sentence is imposed to reduce any sentence. The trial justice held that the 120 days began to run after the defendant's original convictions were affirmed by this court and thus were final in 1980. We hold that the trial justice erred in his computation. In *O'Rourke* we granted the defendant leave to file a motion to reduce pursuant to Rule 35 within 120 days of the filing of that opinion. We held, as we do here, that the defendant's sentence suspension was illegal and reinstated his original sentence. Thus when an original sentence has been reinstated because of an illegal suspension, the Superior Court under Rule 35 may reduce the reimposed sentence within 120 days of the receipt of a mandate of this court, or the correction of the sentence by the trial court, whichever occurs later. The defendant in this case, as in *O'Rourke,* shall not be foreclosed from having a proper determination on his motion to reduce. Since the trial justice, in imposing an illegal sentence, did not consider other alternative forms of reduction that might have been legally applied, it was appropriate for him to consider a motion to reduce within 120 days of restoring the original sentence of life imprisonment.

For the reasons stated, the order of the trial justice reimposing the defendant's life sentence is hereby affirmed. The defendant shall be granted leave to file a motion to reduce sentence pursuant to Rule 35 within 120 days of the date of the filing of this opinion. Nothing in this opinion shall be construed to indicate that the trial justice should or should not grant such relief. We only require that he consider such a motion on its merits and not as time barred. The papers in the case may be remanded to the Superior Court for further proceedings consistent with this opinion.