**Rodney AUSTIN**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued May 2, 1995.
Decided Aug. 11, 1995.

Peter Rodway, Robert Levine (orally), Portland, for plaintiff.

Andrew Ketterer, Atty. Gen., Joseph E. Wannemacher (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Rodney Austin appeals from a judgment entered in the Superior Court (Lincoln County, *Cole, J.*) denying him post-conviction relief.[1] He argued unsuccessfully before the Superior Court that the State was without authority to reinstate his life sentence to prison once that sentence had been discharged. Although the State generally is not prohibited from reinstating a criminal sentence that has been reduced unlawfully, there are temporal limits imposed by due process and notions of fundamental fairness on corrective actions. Because those limits were not considered by the Superior Court, we vacate the judgment.

The facts as preliminarily developed in this proceeding may be summarized as follows: In 1959, Austin was convicted, *inter alia*, of three counts of kidnapping, and sentenced to a single life sentence by the Superior Court (Lincoln County, *Archibald, J.*).[2] Austin unsuccessfully challenged the legality of his sentence, *see Austin v. State,* 158 Me. 292, 183 A.2d 515 (1962), and the adequacy of the kidnapping charges in the indictment, *see Austin v. State,* 160 Me. 240, 202 A.2d 794 (1964).

While serving his life sentence, Austin was convicted in the Superior Court (Knox County, *Naiman, J.*) of escape and was sentenced to serve not less than one nor more than two years consecutive to the life sentence. His subsequent application for parole on his life sentence was denied.[3] Austin successfully appealed to the Appellate Division of the Supreme Judicial Court and succeeded in having his escape sentence increased to not less than one nor more than fifteen years.[4]

---

1. As noted by the Superior Court, the procedural posture of this case is somewhat irregular. The State moved for a summary judgment, a device not contemplated by M.R.Crim.P. 65–78, and then presented a statement of facts. Petitioner responded with a separate statement of facts. The Superior Court did not resolve any factual disagreements, but rather ruled on the validity of the discharge of the sentence as "a pure question of law."

2. The kidnapping statute in effect in 1959 provided for life imprisonment. *See* R.S. ch. 130, § 14 (1954).

3. Austin first became eligible for parole on his original convictions in 1971, when P.L.1971, ch. 397, § 8 made the possibility of parole available to those individuals convicted of more than one offense punishable only by life imprisonment.

4. His incentive for seeking an increase in the length of the escape sentence was to persuade

He reapplied for parole and the parole board discharged his life sentence in November of 1971. He began serving his escape sentence on the same date. In December of 1972, he was paroled on the escape conviction.

Twelve years later, in October of 1984, Austin was convicted in Vermont of sexually abusing his niece. After serving his sentence on that conviction, he was returned to Maine in 1985 as a parole violator and incarcerated. He was subsequently informed by the Department of Corrections and the Attorney General that his life sentence was reinstated because the earlier discharge of the sentence had been illegal and void. That conclusion was based on *Gilbert v. State*, 505 A.2d 1326 (Me.1986), in which we held that the application of the discharge provision enacted by P.L.1959, ch. 312, § 13 to individuals sentenced prior to the statute's enactment was unconstitutional.

■ Austin filed the present petition for post-conviction review in the Superior Court alleging (1) ineffective assistance of counsel, (2) violations of due process and equal protection, and (3) the State's lack of authority to reinstate a discharged life sentence. The Superior Court (*Delahanty, C.J.*) summarily dismissed grounds 1 and 3. The State moved for a summary judgment on the remaining ground, contending that the real issue presented was whether Austin "is entitled to the benefit of a discharge from his life sentence, where (i) the discharge constitutes a commutation of Austin's sentence granted by the Parole Board and (ii) was not within the statutory authority of the Parole Board at the time it was granted." The Superior Court (*Cole, J.*) denied post-conviction relief. We granted Austin's request for a certificate of probable cause on the due process issue, 15 M.R.S.A. § 2131 (Supp.1994); M.R.Crim.P. 76 and now vacate the court's decision.

There is no dispute that the parole board acted beyond its authority in discharging Austin's life sentence. The reduction of Austin's life sentence was the equivalent of a commutation, and thus intruded on the power reserved to the Governor by Article V of the Maine Constitution.[5] *See Gilbert v. State*, 505 A.2d 1326, 1328 (Me.1986); *Bossie v. State*, 488 A.2d 477, 479–80 (Me.1985).

■ The question presented in this case, however, is whether due process, state or federal, places any temporal limit on the correction of the mistake made by the State in discharging Austin's life sentence. Although we do not now define these limits, we conclude that, in extreme circumstances, the reinstatement of a discharged sentence, even if discharged illegally, "might be fundamentally unfair, and thus violative of due process." *Breest v. Helgemoe*, 579 F.2d 95, 101 (1st Cir.), *cert. denied*, 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978). Thus, the Superior Court erred in ruling as a matter of law on Austin's due process claims.

The analysis employed by the First Circuit in *DeWitt v. Ventetoulo*, 6 F.3d 32 (1st Cir. 1993), *cert. denied*, — U.S. ——, 114 S.Ct. 1542, 128 L.Ed.2d 193 (1994) is instructive. In *DeWitt*, a portion of the petitioner's life sentence was suspended, reducing the minimum length of time he had to serve in prison before seeking release on parole. He eventually was paroled, started his own business and resumed relationships with his family and girlfriend. While on parole, he engaged in criminal conduct and was reimprisoned. Instead of treating him as a parole violator, however, the State successfully moved to have the suspension order vacated pursuant to a decision of the Supreme Court of Rhode Island rendered after his sentence was suspended but four years before he actually was released on parole.

The First Circuit's analysis focused on "whether and when a state can reopen a

the Parole Board to grant him parole. With a longer sentence, he was subjected to a longer period of supervision while on parole.

5. Me. Const. art. V, pt. 1, § 11 provides:

The Governor shall have power to remit after conviction all forfeitures and penalties, and to grant reprieves, commutations and pardons, except in cases of impeachment, upon such conditions, and with such restrictions and limitations as may be deemed proper, subject to such regulations as may be provided by law, relative to the manner of applying for pardons. Such power to grant reprieves, commutations and pardons shall include offenses of juvenile delinquency.

matter after a final unappealed decision, after a substantial lapse in time during which the state had actual knowledge of the error, and after a significant change in circumstances." *Id.* at 34–35. The court considered a number of factors in upholding the conclusion that *DeWitt* was an extreme case and the State, in correcting the illegally suspended sentence, had acted beyond the limits imposed by due process.

■ We acknowledge the relevance of the non-exclusive list of factors considered in *De-Witt:* the lapse of time between the mistake and the attempted increase in sentence, whether or not the defendant contributed to the mistake and the reasonableness of his intervening expectations, the prejudice worked by a later change, and the diligence exercised by the state in seeking the change. *Id.* at 35. Other legitimate considerations could include what actions the petitioner has taken in reliance on the mistake, the fact that he was still in execution of his sentence when the mistake was corrected, and his aggravation of the situation by reoffending.

■ The Superior Court addressed none of these factors in entering the summary judgment for the State. Such a case does not lend itself to disposition as a matter of law. We do not suggest the result that should follow from a proper analysis, only that the outcome depends on the "combined weight of the elements" to be considered by the trial court. *Id.* at 36. Accordingly, we remand for the Superior Court's reconsideration of Austin's due process claim.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.