**UNITED STATES of America**

v.

**Charles F. CAMPBELL, Defendant.**

**No. CR. 92–0234–04(JHG).**

United States District Court,
District of Columbia.

Nov. 25, 1997.

Chisellen R. Kolb, Asst. U.S. Atty., for the Government.

Charles F. Campbell, San Diego, CA, for Defendant.

Philip T. Inglima, Washington, DC, for Amicus.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Defendant Charles F. Campbell is presently before the Court for resentencing in accordance with the opinion and judgment of the United States Court of Appeals for the District of Columbia Circuit. *See United States v. Walls*, 70 F.3d 1323 (D.C.Cir.1995), *cert. denied sub nom. Campbell v. United States*, 517 U.S. 1147, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1996). For the reasons stated below, Mr. Campbell will receive a sentence as set forth in 21 U.S.C. § 841(b) on the date cited herein.

### I. Background

On December 2, 1992, a jury convicted Charles F. Campbell of one count of conspiracy to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846, and one count of distribution of 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii). Because he had a prior conviction for a felony drug offense [1]

---

1. The government filed an Information on November 16, 1992, regarding Mr. Campbell's two prior felony drug convictions but only one (Dock-

the statute required that the Court sentence him to "a term of imprisonment which may not be less than 20 years." 21 U.S.C. § 841(b)(1)(A)(iii). Nonetheless, on January 25, 1994, (*see* Amended Judgment signed February 10, 1994), the trial judge[2] sentenced Mr. Campbell to 33 months incarceration on each count to run concurrently. The trial judge found that the statutory mandatory minimum twenty-year sentence would be "cruel and unusual" punishment within the meaning of the Eighth Amendment as applied to an addict such as Mr. Campbell, *United States v. Walls*, 841 F.Supp. 24, 31–33 (D.D.C.1994) *rev'd in relevant part*, 70 F.3d 1323 (1995). In this four-defendant conspiracy, Mr. Campbell performed primarily as a "cooker" of the powdered cocaine into crack cocaine. *Id.* at 32. The 33–month sentence represented the high end of the applicable Guidelines range for an equivalent amount of powder cocaine. *Id.* at 26, 33. It was apparent to all involved in the sentencing hearing that the government would appeal the sentence imposed by the Court.[3]

On appeal, the Circuit Court rejected the trial court's Eighth Amendment analysis and stated that "harsh or not, the court was bound by the statute." *United States v. Walls*, 70 F.3d 1323, 1330–31 (D.C.Cir.1995), *cert. denied sub nom. Campbell v. United States*, 517 U.S. 1147, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1996). Therefore, the Court held that "[a]s applied to Campbell and [his co-defendant] Blakney, the mandatory minimum sentences set forth in § 841(b) are not unconstitutional and the district court erred in not imposing those sentences." *Id.* at 1331. The case was remanded for resentencing of Mr. Campbell "in accordance with this opinion." *Id.*

At the time the Court of Appeals ruled, Mr. Campbell had completed more than 18 months of the 33–month sentence. *See* Def.'s Chronology of Relevant Dates, Ex. C to Evidentiary Hearing on Due Process Issue, Mar. 14, 1997. Taking into account good-time credits, he satisfied the entire 33–month sentence on November 8, 1996. *Id.* (The full-term expiration date of the original sentence would have been February 23, 1997. *Id.*) He remains incarcerated under the bond statute, 18 U.S.C. § 3143(a)(2), in a post-conviction/pre-sentencing status.

## II. Discussion

The only issue remaining for resentencing is due process. Therefore, the question at this juncture is whether it would be fundamentally unfair, and thus violative of due process, for this Court to correct the illegal sentence and thereby substantially increase Mr. Campbell's term of incarceration after he has served a significant portion of his original sentence.[4]

---

et No. 75–3) was final at the time of sentencing and would be used to enhance the penalty.

2. On April 18, 1997, at the request of the District Judge, this case was randomly reassigned by the Calendar Committee to this Judge. Since that reassignment, the Court has fully familiarized herself with the entire record, including the Probation Officer's update of the original Presentence Investigation Report, and determined that she can proceed to sentence without prejudice to either party.

3. The following exchange between the Court and Assistant United States Attorney Steven Bunnell occurred at the sentencing hearing:
 The Court: I am reluctant to keep those two particular people [Campbell and Blakney] in jail any longer, and I'm anxious to get them to the penitentiary. You have the right to appeal.
 Mr. Bunnell: That's true.
 The Court: And *you certainly will appeal* ....
 Mr. Bunnell: ... Certainly, the way the Court is proceeding at this point, *Mr. Campbell is*

*getting a tremendous break compared to other people who would be similarly situated to him* who come through this courthouse everyday, and perhaps don't have the benefit of an army of amicus lawyers and other people.
Transcript of Sentencing (Jan. 25, 1994) at 4–5 (emphasis added).

4. The United States Court of Appeals for the District of Columbia Circuit has not ruled on this due process question in a published opinion. However, the Circuit Court did issue a two-page, unpublished judgment in the case of Mr. Campbell's co-defendant Karen Blakney. *See United States v. Blakney*, No. 97–3043, 132 F.3d 1482, 1997 WL 702372 (C.A.D.C. Oct. 23, 1997). In that judgment, the Court rejected Ms. Blakney's due process argument after finding that she could have no legitimate expectation of finality in her original sentence because she "knew from the start that the legality of her sentence was in dispute." *Id.* at 2.

■ As a general rule, a court not only can, but must, increase a previously imposed sentence if that sentence is later found to be statutorily-invalid. *See Bozza v. United States*, 330 U.S. 160, 166–67, 67 S.Ct. 645, 648–49, 91 L.Ed. 818 (1947) ("The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. In this case the court only set aside what it had no authority to do, and substituted directions required by the law to be done upon the conviction of the offender.") (citations omitted). However, several Circuits have recognized that "there must be some limitation on the power of the trial court to enhance punishment by resentencing after the defendant's commencement of service." *United States v. Lundien*, 769 F.2d 981, 986 (4th Cir.1985); *see Breest v. Helgemoe*, 579 F.2d 95, 101 (1st Cir.1978) ("we note our concern that the power of a sentencing court to correct even a statutorily invalid sentence must be subject to some temporal limit"). While the courts agree that this limitation is grounded in notions of due process, *see, e.g., DeWitt v. Ventetoulo*, 6 F.3d 32, 34–35 (1st Cir.1993); *United States v. Lundien*, 769 F.2d 981, 986 (4th Cir.1985), they have not defined its contours with precision.

Instead, the courts have balanced a number of case-specific factors to determine whether resentencing in a particular case would violate due process. *See, e.g., DeWitt*, 6 F.3d at 32 ("[i]n some areas, such as search and seizure, due process has been reduced to detailed and nearly mechanical rules. In other areas, the precepts are very general and everything turns upon the circumstances. The issue here is of this latter type."). One of the most frequently considered factors is whether the defendant had served so much of his original sentence that his expectations of finality have crystallized. *DeWitt*, 6 F.3d at 35; *Lundien*, 769 F.2d at 987; *Breest*, 579 F.2d at 101. As example, the *DeWitt* Court found it particularly significant that the defendant "was actually released" from prison and had "laid down new

roots in society" and reestablished family ties. *DeWitt*, 6 F.3d at 35. On the other hand, the *Breest* Court found a two-week delay between the original sentencing and its correction to be insignificant. *Breest*, 579 F.2d at 101.

Another important consideration is the prosecution's diligence in seeking the change. *DeWitt*, 6 F.3d at 35. In *DeWitt*, the Court faulted the state for its lack of diligence in failing to challenge the suspension of defendant's sentence "long before" he was released. *Id.* Also, courts have considered the motive behind the resentencing. *Lundien*, 769 F.2d at 987 ("it is beyond doubt that a sentence enhanced . . . because of the vindictiveness or other plainly improper motive of the trial court would be fundamentally unfair and would deny the defendant due process"); *Breest*, 579 F.2d at 101 (where court failed to fulfill statutory duty to make finding regarding nature of crime, sentence was legally incomplete and must be corrected by the court).

■ In this case, Mr. Campbell's expectations of finality cannot be said to have crystallized prior to the Court of Appeal's remand. Mr. Campbell was aware from the very moment of sentencing that the Court's decision to depart downward so radically from the statutory mandatory minimum sentence was considered by government counsel to be most unusual and would be immediately challenged by the United States.[5] Mr. Campbell had served just over half of his initial sentence when he received confirmation, by way of the Court of Appeals' reversal and remand, that his 33–month sentence was invalid. Significantly, this Circuit has noted that a defendant does not have an expectation of finality when "he is or should be aware at sentencing that the sentence may permissibly be increased." *United States v. Fogel*, 829 F.2d 77, 87 (D.C.Cir.1987) (interpreting *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980)); *see also United States v. Rourke*, 984 F.2d 1063, 1066 (10th Cir.1992) (finding

---

**5.** *See supra* note 3. Indeed, the co-defendants and Mr. Campbell made direct appeals alleging trial errors as to which the Court of Appeals affirmed the trial court. The government cross-appealed

the refusal of the trial court to apply the statutory mandatory minimum sentence to Mr. Campbell and one of his co-defendants.

that a defendant cannot acquire an expectation of finality in an illegal sentence because such sentence remains subject to modification); *United States v. Rico,* 902 F.2d 1065, 1068–69 (2nd Cir.1990) (same). Although the Court recognizes that Mr. Campbell understandably entertained high hopes that his imprisonment would be capped at 33 months, he has been on clear notice since his sentencing date that his sentence was most likely subject to increase. Legally his expectations in the finality of the original sentence cannot be said to have crystallized.

In addition, there is no suggestion whatsoever in this case that the government is proceeding as a result of any improper motive or has delayed proceedings or that the government has made any procedural default of the type condemned in *DeWitt.* Government counsel noted during the sentencing hearing that he planned to appeal and he did timely appeal.

### III. Conclusion

The cases cited by defense counsel suggest that in a most unusual case it might well be fundamentally unfair and violative of the Due Process Clause for the Court to resentence a defendant after he has served a statutorily invalid sentence.[6] Mr. Campbell's situation does not constitute such a case. Therefore, imposing the statutorily correct sentence on Mr. Campbell, however harsh the judgment, does not violate due process. Because both the applicable statute and the Court of Appeals' judgment in this case clearly and unequivocally dictate that Mr. Campbell receive a sentence as set forth in 21 U.S.C. § 841(b), it is hereby

**ORDERED** that the defendant shall appear before the Court on December 17, 1997, at 9:15 a.m. for the purpose of sentencing in accordance with this opinion.

IT IS SO ORDERED.

6. The Court expresses deep appreciation to Philip T. Inglima, Esq ., who was appointed in 1993 as *amicus curiae,* who continues to so participate, and who has filed multiple memoranda and appeared at numerous hearings. With professional dedication, he has vigorously advocated on behalf of Mr. Campbell. His services have been remarkable.